Kevin Dewayne BAKER *v.* STATE of Arkansas

CR 97-1050                                              974 S.W.2d 474

Supreme Court of Arkansas
Opinion delivered September 24, 1998

*Hatfield & Lassiter*, by: *Jack T. Lassiter*, for appellant.

*Winston Bryant*, Att'y Gen., by: *C. Joseph Cordi*, Ass't Att'y Gen., for appellee.

W.H. "DUB" ARNOLD, Chief Justice. On July 24, 1997, a jury convicted the appellant, Kevin Dewayne Baker, of two counts of first-degree murder and sentenced him to life imprisonment in the Arkansas Department of Correction. Baker timely filed his notice of appeal to this court on August 4, 1997, and our jurisdiction is warranted pursuant to Ark. Sup. Ct. R. 1-2(a)(2) (1998). The appellant raises three points on appeal. First, he argues that the trial court abused its discretion by admitting into evidence eight crime-scene photographs depicting the deceased victims. Second, Baker contends that the trial court abused its discretion by admitting a State witness's "surprise" testimony, formerly unrevealed to either party. Third, Baker asserts that the trial court abused its discretion by admitting testimony concerning an oral statement, attributed to the appellant, that "it gets easier every time." We conclude that the appellant's arguments lack merit, and we hold that the trial court did not abuse its discretion. Accordingly, we affirm.

## I. Facts

On March 14, 1996, a number of guests gathered at the appellant's home, including the appellant, Greg Cureton (the appellant's brother-in-law), David Davis, Greg Dufrene, and Clyde Dufrene. Witnesses testified that the Dufrene brothers taunted Cureton and told him that a named individual had taken out a "hit" on Cureton's life. According to the Dufrenes, a man named Paul Jones had been hired to kill Cureton. At approximately 9:00 or 9:30 p.m., the appellant and Cureton left the party en route to Paul Jones's home.

At trial, Cureton testified that after he and the appellant arrived at Jones's home, Jones came outside and they talked. According to Cureton, as he turned to return to the vehicle and leave, the appellant rushed past him, stabbed Jones and then

stabbed Sheila Goodwin, Jones's friend who was also on the scene. Next, Cureton reported that Baker handed him the knife and asked him to stab Jones and Goodwin. He acknowledged that he pretended to do so, and, then, he and the appellant dragged the bodies into Jones's trailer. After leaving Jones's trailer, they encountered David Davis and his wife on the road. Cureton informed the Davises that they should not go to Jones's residence. Following this meeting, Cureton and the appellant disposed of the knife used to stab Jones and Goodwin. Subsequently, the police recovered a knife from a location identified by Cureton as the bridge where he and Baker had abandoned the knife. Finally, Cureton reported that he and the appellant traveled to the Davises' home where they burned clothes and Baker cleaned up and asked for thread to stitch up a deep gash in his hand.

Paul Jones and Sheila Goodwin were found dead in Jones's trailer early on the morning of March 15, 1996. According to the autopsy report, the cause of death for both victims was multiple stab wounds. The day after the incident, the appellant visited his sister's home in Michigan where he was arrested and interviewed, also on the morning of March 15, 1996. In his defense, Baker contended that Cureton stabbed Jones and Goodwin and that he sustained the gash on his hand while he was attempting to stop Cureton.

## II.   Admission of photographs

Relying on Ark. R. Evid. 403, Baker first argues that the trial court erred by permitting the State to introduce eight crime-scene photographs of the victims' bodies as they were found by the police. Rule 403 provides for the exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time. Although evidence is relevant, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *Id.*

Absent an abuse of discretion, this court will not reverse a trial court for admitting photographs. *Jones v. State*, 329

Ark. 62, 65, 947 S.W.2d 339, *cert. denied*, 118 S. Ct. 574 (1997). Moreover, as to the admission of photographs, we have specifically discussed the guideposts for determining whether a trial court has abused its discretion. In *Jones*, we explained that although the relevancy and admission of photographs is a matter within the sound discretion of the trial court and that we are highly deferential to that discretion, we reject a *carte blanche* approach to the admission of photographs. *Id.* (citing *Carmago v. State*, 327 Ark. 631, 940 S.W.2d 631 (1997) (internal citations omitted)). In making the admission determination, we require a trial court to consider, first, whether the relevant evidence creates a danger of unfair prejudice, and, second, whether the danger of unfair prejudice substantially outweighs its probative value. *Id.* at 66.

■ Significantly, after applying the Rule 403 balancing test, we have held that

> even the most gruesome photographs may be admissible if they tend to shed light on any issue, to corroborate testimony, or if they are essential in proving a necessary element of a case, are useful to enable a witness to testify more effectively, or enable the jury to better understand the testimony. Other acceptable purposes are to show the condition of the victim's bodies, the probable type or location of the injuries, and the position in which the bodies were discovered. Of course, if a photograph serves no valid purpose and could only be used to inflame the jury's passions, it should be excluded.

*Id.*

■ Here, the appellant argues that because the defense stipulated as to the cause of death, i.e., multiple stab wounds, that the photographs lost any relevance if admitted for the purpose of showing the cause of death. However, the State correctly points out that a defendant cannot prevent a photograph's admission simply by conceding the facts of the crime. *See Schalski v. State*, 322 Ark. 63, 68, 907 S.W.2d 693 (1995) (citing *Strawhacker v. State*, 304 Ark. 726, 804 S.W.2d 720 (1991)).

The appellant was charged with murder in the first degree. A person commits murder in the first degree if, with a purpose of causing the death of another person, he causes the death of

another person. Ark. Code Ann. § 5-10-102 (Repl. 1997). At trial, the State's theory of the case was that Baker stabbed Jones and Goodwin outside Jones's home and then dragged the bodies inside the home with the assistance of Greg Cureton. As to the admission of the challenged photographs, the State responds that duplicative photographs were removed and that the trial court utilized the Rule 403 balancing test when it struck State's exhibit 10. According to the State, although the remaining photos were admittedly graphic and gruesome, they depicted locations and types of wounds, the location of the bodies, and evidence of a fire, that corroborated Greg Cureton's testimony and tended to prove the appellant's purposeful intent, an element of the crime.

For example, Investigator Lynn Benedict of the Arkansas State Police, testified that exhibit 8 depicted a deep cut on the left side of Goodwin's face and perhaps hair that may have been burned on the right side. He also noted that exhibit 9 showed stab marks to Goodwin's chest and nonpuncture scrapes, and that exhibit 11 depicted Goodwin's blue jeans with blood stains and tears on the left side. In light of the acceptable purposes for admitting photographs, we cannot say that the trial court abused its discretion by admitting these photographs.

Investigator Benedict also testified regarding Exhibit 12, a photo showing Jones's left arm lying on an artificial leg that was mostly consumed by fire. Benedict noted that the photo shows that Jones's head was charred and reveals cut and slash wounds, burns on the left side of the body, and a slash mark across the throat. Next, Benedict identified exhibit 13 as a photo depicting Jones's body and burned hair, a burned artificial limb, and a wood stove. Additionally, the photo revealed cut wounds on Goodwin's arm. Exhibit 15 reflected Jones's burned hair, deep cut wounds on Goodwin's body, including slash marks across the throat, and drag marks leading from the front door to Jones's body. Exhibit 16 showed an overview of both victims' bodies and the drag marks. Finally, Exhibit 18 showed the artificial limb laying under Jones's left arm, Goodwin's right hand charred and burned, and blood stains underneath Jones's body.

■ Appellant suggests that one photograph could have fairly and accurately depicted the number, location, and nature of the victims' wounds. However, the State points out that Jones suffered twenty-one penetrating stab wounds to his body, back, chest, abdomen, left arm, left leg, and six wounds to his neck, not including defensive wounds. Goodwin suffered ten stab wounds to her body, neck, chest, and back, not including defensive wounds. Given the acceptable purposes for admitting photographs, we cannot say that the trial court abused its discretion by admitting these photographs.

### III. Admission of David Davis's "surprise" testimony

Second, Baker contends that the trial court abused its discretion by denying his motion to strike State witness David Davis's "surprise" testimony that "Kevin [Baker] told me to tell if anybody had asked me what happened to his hand, he had cut himself filleting fish." Immediately after this remark, the appellant objected and moved the trial court to strike the statement on the basis that the appellant had not been notified prior to trial that Davis would offer this evidence. However, both parties concede on appeal that neither party knew that Davis would make this statement, and the trial court noted that there was no evidence of intent by the State to elicit this specific testimony.

Unfortunately, both parties cite inapposite authority to support their positions. For example, the appellant's reference to Ark. R. Crim. P. 17, which sets forth a prosecuting attorney's disclosure obligations to a defendant, is irrelevant here because the prosecution acquired the information contemporaneously with the defense. Likewise, the appellant's reliance on *Scoggins v. State*, 312 Ark. 106, 848 S.W.2d 400 (1993), is misplaced. *Scoggins* is distinguishable from the instant facts because it involved a prosecutor's failure to disclose, which is not at issue here. This is simply not a case about a potential discovery violation.

The State also cites irrelevant authority in support of its argument that the trial court properly admitted the challenged statement. The State points to *Henry v. State*, 278 Ark. 478, 647 S.W.2d 419 (1983), a case involving a police officer who testified

about an undisclosed statement made by the defendant. Like the instant case, the prosecution was unaware of the statement until it was revealed at trial. Specifically, the defendant in *Henry* contested the introduction of his statement, made at the time of his arrest, "don't shoot — I give up." The *Henry* court characterized the statement by explaining, "we cannot say with any degree of certainty that the statement was either inculpatory or damaging to the client's defense." We agree with the instant appellant that the nature of the statement in *Henry* is distinguishable from the statement challenged on appeal.

■ However, the material issue here is whether the trial judge erred in admitting the "surprise" testimony under a Rule 403 analysis. Accordingly, this court will not reverse the trial court's decision, absent an abuse of discretion. *See Parker v. State,* 333 Ark. 137, 145, 968 S.W.2d 592 (1998) (citing *Misskelley v. State,* 323 Ark. 449, 915 S.W.2d 702, *cert. denied,* 117 S. Ct. 246 (1996)). The appellant's general assertion that he was prejudiced by the statement, which may tend to demonstrate a guilty state of mind, is not a compelling basis alone for reversing the trial court's decision — for any evidence that tends to establish the guilt of the defendant is inherently prejudicial.

■ Pursuant to Rule 403, the trial court must consider whether the statement, although relevant, should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice. Applying the Rule 403 balancing test, we cannot say that the trial court abused its discretion in admitting the testimony. Even assuming, *arguendo,* that the statement was prejudicial, it constituted harmless error in light of the other evidence and testimony offered at trial. In light of the foregoing, we hold that the trial court did not abuse its discretion in admitting the testimony and denying the appellant's motion to strike the statement.

### IV. Admission of Greg Cureton's testimony

Third, Baker challenges the admission of Greg Cureton's testimony that, following the homicides and while he and the appellant were still at Jones's residence, the appellant told him, "It just

gets easier every time." Anticipating this testimony, the appellant objected to its introduction on the basis of Rule 403, which permits exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time. Again, we note that although evidence is relevant, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *Id.*

■ ■ The appellant's cellmate, Donnie Dollarhyde, also a witness for the State, testified that the appellant admitted to the homicides, said that he had not lost any sleep over it, that it was a "rush," and, consistent with Cureton's testimony, that "it just gets easier every time." Significantly, the appellant did not object to Dollarhyde's testimony regarding the statement "it just gets easier every time." In support of barring our consideration of this point on appeal, the State cites *Stephens v. State*, 328 Ark. 81, 89, 941 S.W.2d 411 (1997), for the proposition that when a question previously objected to is repeated, and there is no second objection, the matter is waived on appeal. Moreover, even if the appellant makes a proper objection, he must preserve his argument by renewing that objection if the State subsequently attempts to introduce the same or similar evidence. *See Mills v. State*, 321 Ark. 621, 623, 906 S.W.2d 674 (1995). Given the subsequent admission of the statement through Dollarhyde, without objection, we hold that this issue was not preserved for our review on appeal, and we affirm the trial court.

### V.   Rule 4-3(h)

In accordance with Ark. Sup. Ct. R. 4-3(h) (1998), the record has been reviewed for adverse rulings objected to by the appellant but not argued on appeal, and no reversible errors were found. Accordingly, the appellant's judgment of conviction is affirmed.