Leslie A. YOUNG *v.* STATE of Arkansas

CR 06-1263                                257 S.W.3d 870

Supreme Court of Arkansas
Opinion delivered May 31, 2007

*R. T. Starken,* for appellant.

*Dustin McDaniel,* Att'y Gen., by: *Kent G. Holt,* Ass't Att'y Gen., for appellee.

PAUL DANIELSON, Justice. Appellant Leslie A. Young brings this criminal appeal from her convictions and sentences for capital murder, aggravated robbery, attempted arson, and two counts of theft of property. She raises four points of error: (1) that the circuit court erred in failing to grant her motion for directed verdict when the State failed to prove that the death of Stephen Furr was done in the course of or in furtherance of aggravated robbery, committed by the defendant or a person acting with her; that she employed physical force in the taking of property; that she knowingly took property of

another; or that she started a fire for a proscribed purpose; (2) that the circuit court erred in denying her motion to suppress her custodial statement; (3) that the circuit court erred in denying her motion to suppress the search of her blue jeans; and (4) that the circuit court erred in giving a separate accomplice instruction on the charge of capital murder. While we hold that a limited remand is necessary on point two on appeal, we affirm on all other points.

On January 2, 2006, Detective John Qualls of the Sharp County Sheriff's Department was dispatched to the scene of a homicide at the residence of Steve Furr, the victim. Upon entry, he found Mr. Furr dead in his recliner. The medical examiner testified that Mr. Furr died from multiple stab wounds and blunt force trauma. Mr. Furr had suffered twelve stab wounds and twenty-two abrasion wounds. Numerous photographs of the crime scene were taken, including photographs of empty boxes, areas from which it was obvious household items had been stolen, a partially burned bag of dog food, weapons believed to have been used in the commission of the crime, as well as Mr. Furr's body.

In the course of the investigation, the chief investigating officer, Detective Sergeant Huffmaster instructed Detective Qualls to contact the local pawnshops in search of suspects that he had developed in the case. After contacting E-Z Pawnshop, Detective Qualls learned that Bill Young, Leslie Young's husband, had just left with a man named Jimmy Doug Simpson after pawning several tools. The officers were able to locate Mr. Simpson and, after his tip, apprehended both Leslie Young and her husband.

On January 5, 2006, the State charged Leslie Young (hereinafter "Young") with capital murder. Thereafter, on January 20, 2006, the State amended the information, charging Young with capital murder, aggravated robbery, residential burglary, two counts of theft of property, and attempted arson. The State alleged that Young, acting alone or with an accomplice, killed Mr. Furr during a robbery or burglary of his home, attempted to set fire to his home, and stole household items from Mr. Furr, valued at more than $2,500, as well as his truck, valued at more than $2,500.

After Young's arrest, Sheriff Dale Weaver went to her jail cell upon receiving a phone call from the jail administrator concerning possible blood stains on Young's clothing, face, and hands. While Sheriff Weaver testified that he did not intend to take a statement from Young, she made several statements to him while he was in contact with her. She informed Sheriff Weaver that on

the night of January 1, 2006, she had been with her husband, riding around Cave City, and that they were with Mr. Furr and his wife at the home of another couple.[1] Young also told Sheriff Weaver that after they dropped off Mr. Furr's wife, she and her husband went to Mr. Furr's home and stayed until around two o'clock in the morning, when Mr. Furr took them home. Sheriff Weaver admittedly did not personally *Mirandize* Young; however, he testified that he spoke with another officer that had read Young her rights and that Young verbally expressed that she had been read her rights and understood them.

On July 18, 2006, Young was tried by a jury in the Sharp County Circuit Court. At the conclusion of the State's case, Young moved for a directed verdict, alleging that the State did not meet its burden of proof. The circuit court denied the motion, and Young rested without presenting a case. The jury found Young guilty of capital murder, aggravated robbery, two counts of theft of property, and attempted arson and sentenced her to forty years' imprisonment for aggravated robbery, ten years' imprisonment for one count of theft of property, three years' imprisonment for the second count of theft of property, ninety days' imprisonment for attempted arson, and life without parole for the capital murder of Mr. Furr. The sentences were ordered to run consecutively. Young filed a notice of appeal on August 17, 2006, and the record was lodged in this court on November 2, 2006.

## I. Motion for Directed Verdict

Young first argues that the circuit court erred in failing to grant her motion for directed verdict because the State failed to meet its burden of proof on the charges of capital murder, aggravated robbery, theft of property, and attempted arson. However, it is well settled that we will not address arguments that are raised for the first time on appeal. *See Davis v. State,* 368 Ark. 401, 246 S.W.3d 862 (2007). Here, Young failed to present to the circuit court an argument on the charges of attempted arson and theft of property in her motion for directed verdict. Therefore, we will not entertain the argument that the circuit court erred in failing to grant Young's motion for directed verdict on the charges of attempted arson and theft of property.

---

[1] Although Young referred to Mrs. Furr as Steven Furr's wife, the record reveals that she is actually his ex-wife and that she did not live with him at the time of his death.

In addition, Young argued to the circuit court that her motion for directed verdict on the aggravated-robbery charge should have been granted because a conviction would violate the Double Jeopardy provision of the United States and the Arkansas constitutions. However, that is not the argument presented on appeal. Young now submits that the State failed to meet its burden of proof to sustain her conviction of aggravated robbery. Because this argument is also raised for the first time on appeal, we will not address it.

At the close of the State's case, Young did move for a directed verdict on the charge of capital murder, arguing that the State failed to present sufficient evidence that Young employed force for the purpose of committing theft or that the death of Mr. Furr was in the course of or in the furtherance of the robbery. This court treats a motion for directed verdict as a challenge to the sufficiency of the evidence. *See Tubbs v. State*, 370 Ark. 47, 257 S.W.3d 47 (2007). In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial. *See id.* Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *See id.* This court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *See id.*

Testimony at trial revealed that Young and her husband were with Mr. Furr the evening of January 1, 2006. The next day, Mr. Furr was found dead in his recliner, having suffered multiple stab and blunt-trauma wounds. Two weapons, an Old Hickory butcher knife and a screwdriver, were found underneath Furr's body. Several household items were missing from Mr. Furr's home and there was blood splatter on his walls. The medical examiner testified that Mr. Furr had several defensive injuries on his body. Investigators found Mr. Furr's gas stove twisted off the wall and leaking propane, as well as a bag of Alpo dog food that had been set on fire and melted one of the walls. An empty carton was found next to Mr. Furr's recliner that described a canister of pepper spray and was labeled with the brand name "Maxum."

Mr. Nolan Henning testified that on January 2, 2006, Young and her husband tried to sell him some tools or some guns after he saw them at the Sinclair gas station in Batesville, Arkansas. His testimony revealed they were driving a "utility truck." Henning

testified that Young commented that they "needed some money" because they "needed to leave town quick."

David Drew, a friend of Young and her husband, testified that the couple came to his home around 11 a.m. on January 2, 2006, and asked for his help to pawn some tools. However, the pawn shop was closed. On January 3, 2006, Young and her husband were seen operating the truck owned by Mr. Furr. Young's husband had also been identified as having pawned a large assortment of items, including tools positively identified as belonging to Mr. Furr, at E-Z Pawn in Batesville, Arkansas. Mr. Furr's truck was stopped by officers and the driver, Jimmy Doug Simpson, explained that the truck had been turned over to him by Young and her husband. Young's fingerprints where identified in Mr. Furr's truck.

Anita Miller, another friend of Young and her husband, testified that she was at a doctor's appointment on January 3, 2006, when the couple came to her and asked her for a ride back to their house. Miller agreed and allowed them to stay in her vehicle as she finished her appointment. However, the police apprehended Young and her husband before Miller was finished. The next day, as Miller readjusted the seat in her car that Young had been sitting in the previous day before she was arrested, she found a wallet containing identification of Mr. Furr.

When Young was arrested, a canister of "Maxum" pepper spray was found on her person. After her arrest and she had been given jail attire, blood splatter was noticed on the jeans she had been wearing. The forensic biologist and blood-splatter specialist testified that the blood spots on Young's jeans revealed that "the blood fell onto the inside of the pants" and that the pants were "not in a normal wearing fashion" when the blood was deposited. The chief forensic DNA examiner testified that the blood samples from Young's jeans matched the genetic profile of Mr. Furr.

In the instant case, we cannot say that the jury had to resort to speculation or conjecture to conclude that Mr. Furr was killed in the course of or in furtherance of an aggravated robbery. We hold that the evidence presented at trial was sufficient and substantial and that the circuit court did not err in denying Young's directed-verdict motion.

## II. Custodial Statement

For her second point on appeal, Young argues that the circuit court erred in denying her motion to suppress incriminat-

ing statements that she made to Sheriff Dale Weaver after she was arrested. It is clear and undisputed that Young was in custody and that Sheriff Weaver was not the individual that advised Young of her *Miranda* rights. Young argues that, although Sheriff Weaver testified that Trooper Jeremy Page had told him that he advised Young of her rights under *Miranda* and that Young had indicated she had been previously advised of her rights, Sheriff Weaver's testimony did not rebut the presumption that the custodial statement was involuntary and that the State failed to prove that the statement was voluntarily, knowingly, and intelligently made.

A review of the record reveals that Sheriff Weaver testified about a conversation he had with Young. The essence of that conversation was that Young admitted that she and her husband were with Mr. Furr on the night of January 1, 2006, driving around and spending time at another couple's home. In addition, Young stated that later in the evening she, her husband, and Mr. Furr went to Mr. Furr's home and stayed until around two o'clock in the morning, at which time Mr. Furr took her and her husband home. Young denied having taken Mr. Furr's truck home. Towards the end of their conversation, Sheriff Weaver stated that something really bad had happened at Mr. Furr's home and Young immediately stated "I didn't do it," and shook her head in the negative.

In reviewing the denial of a motion to suppress a statement, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical fact for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court and proper deference to the circuit court's findings. *Dickerson v. State*, 363 Ark. 437, 214 S.W.3d 811 (2005). A statement made while in custody is presumptively involuntary, and the burden is on the State to prove by a preponderance of the evidence that a custodial statement was given voluntarily and was knowingly and intelligently made. *See Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003). In order to determine whether a waiver of *Miranda* rights is voluntary, this court looks to see if the confession was the product of free and deliberate choice rather than intimidation, coercion, or deception. *See id.*

According to Arkansas Code Annotated section 16-89-107(b)(1) (Repl. 2005),

> . . . the determination of fact concerning the admissibility of a confession shall be made by the court when the issue is raised by the

defendant; the trial court shall hear the evidence concerning the admissibility and the voluntariness of the confession out of the presence of the jury, and it shall be the court's duty before admitting the confession into evidence to determine by a preponderance of the evidence that the confession has been made voluntarily.

Although the language of section 16-89-107(b)(1) suggests that the circuit court is only required to consider the voluntariness of a statement, our case law requires the circuit court to consider in a suppression hearing whether the statement was made after a knowing and intelligent waiver of his or her constitutional rights. *See Rankin v. State*, 329 Ark. 379, 948 S.W.2d 397 (1997).

■ In sum, Young's suppression motion raised the issue of the involuntariness of her statements to the police, and because material witnesses were connected with her controverted statements, it became the State's burden to produce those witnesses at the suppression hearing or to explain their absence. *See Brown v. State*, 347 Ark. 44, 60 S.W.3d 422 (2001). The State did neither. Indeed, the State concedes that it failed to provide the material witness to prove that Young had been properly *Mirandized*.[2] In addition, the record reveals discussion of a video tape of Young being read her rights, but no such evidence was admitted for the record. We hold that the State failed to meet its burden; however, we note that the deficiency in the circuit court's ruling does not in itself entitle Young to a new trial.

As a general rule, most trial errors, including constitutional ones, do not automatically require reversal of a criminal conviction. *See Chapman v. California*, 386 U.S. 18 (1967). Instead, we remand the cause for a new hearing on Young's suppression motion. *See, e.g., Bell v. State*, 324 Ark. 258, 920 S.W.2d 821 (1996) (remand for a new suppression hearing on voluntariness of statement because material police witness not present at first hearing); *Moore v. State*, 303 Ark. 1, 791 S.W.2d 698 (1990) (remand for *Denno* hearing); *Harris v. State*, 271 Ark. 568, 609 S.W.2d 48 (1980) (remand for an explicit determination by the trial court on voluntariness of confession); *Hammers v. State*, 261

---

[2] The State concedes that Trooper Jeremy Page was a material witness that was not called upon to testify at the suppression hearing. A review of the record reveals that another individual, Deputy Wendy Flynn, may have also been present while Sheriff Weaver was speaking with Young.

Ark. 585, 550 S.W.2d 432 (1977) (remand for hearing to determine whether defendant struck a deal with the prosecutor to give a statement in return for immunity). Because this case is remanded for a suppression hearing, we do not reach Young's argument that the circuit court erred in finding her custodial statements should not have been suppressed, as the circuit court will be called upon to rule on that argument after the new hearing. *See Bell v. State, supra.*

### III. Clothing Search

On the second day of trial, Young moved to suppress the results of a warrantless search of her blue jeans, which revealed the presence of the victim's blood, arguing that she had a reasonable expectation of privacy in the clothing and its physical integrity and that a second seizure of her blue jeans occurred when the officers sent pieces of her jeans to the crime lab, which required a warrant. The circuit court denied her motion, and Young now argues on appeal that she had a "reasonable expectation that the physical integrity of her clothing would be preserved," but "does not contend that the State did not have the right to seize her blue jeans."

When considering a denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, giving due weight to inferences drawn by the circuit court, and use the abuse-of-discretion standard. *See Mhoon v. State,* 369 Ark.134, 251 S.W.3d 244 (2007). The circuit court has broad discretion in its evidentiary rulings; hence, the circuit court's findings will not be disturbed on appeal unless there has been a manifest abuse of discretion. *See id.*

Arkansas Rule of Criminal Procedure 16.2(b) requires that a motion to suppress be filed no later than ten days before the trial date. *See* Ark. R. Crim. P. 16.2 (2006). However, a circuit court may entertain a motion to suppress at a later time for good cause. *See Kimble v. State,* 331 Ark. 155, 959 S.W.2d 43 (1998). Here, the circuit court ruled first that the motion was untimely, but went on to opine that there was not a reasonable expectation of privacy in the clothing. While Rule 16.2 does not require every untimely motion to be denied, we cannot say there was an abuse of discretion by the circuit court in denying the motion and affirm on this point.

## IV. Separate Accomplice Instruction

For her final point on appeal, Young argues that the circuit court erred in giving a separate accomplice instruction on the charge of capital murder. Young first contends that she was denied her due process of law, in violation of her Fifth Amendment rights under the United States Constitution and Article 2, Section 8 of the Arkansas Constitution. Furthermore, she states that it is error in a capital murder case to instruct on an alternative ground for conviction, citing *Ward v. State*, 293 Ark. 88, 733 S.W.2d 728 (1987).

■ The record reveals that the only objection Young made to the separate accomplice instruction was that it was a "redundancy" because "accomplice liability is accomplished in the very charge of Capital Murder." Young now makes the constitutional argument and the argument based on *Ward v. State, supra,* for the first time on appeal. As previously noted, this court will not address arguments, even constitutional ones, that are raised for the first time on appeal. *See Davis v. State, supra.* Furthermore, both of these issues are argued by one sentence each, without further explanation of the merits. This court has repeatedly stated that it does not consider assignments of error that are unsupported by convincing argument or sufficient legal authority. *See Ward v. State*, 350 Ark. 69, 84 S.W.3d 863 (2002). For these reasons, we decline to address this point.

### Rule 4-3(h) Review

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Young, and no prejudicial error has been found.

Remanded.