Terry Lee WARD *v.* STATE of Arkansas

CR 06-1327 260 S.W.3d 292

Supreme Court of Arkansas
Opinion delivered June 28, 2007

*Jeff Rosenzweig,* for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.

R OBERT L. BROWN, Justice. On April 26, 2006, Terry Lee Ward, the appellant, was sentenced to life imprisonment for the rape of an eleven-year-old girl, S.D. S.D. alleged that on August 17, 2004, Ward sexually assaulted her while she was visiting his recreational vehicle in Jacksonville with her sister, W.D., and friends. S.D. told her mother about the incident, and on August 23, 2004, Investigator Dana Dusha of the Crimes Against Children Division of the Arkansas State Police interviewed S.D. That same day, Investigator Dusha contacted Ward and told him that he was a suspect in a child molestation case. Investigator Dusha gave him a business card and asked Ward to call the following day.

At approximately two o'clock a.m. on the morning of August 24, 2004, a deputy from the Crittenden County Sheriff's Department and a City of Marion police officer stopped Ward's R.V. traveling northbound on Interstate 55 outside of Marion because of a broken tail light. According to the police officers' testimony, Ward asked the officers to help him locate his driver's license inside the R.V. While looking inside the R.V., the police officers found Investigator Dusha's business card. Corporal Mike Middleton of the Arkansas State Police Criminal Investigation Division then interviewed Ward. After identifying Ward, Corporal Middleton learned that he was a suspect in a child molestation case in Pulaski County. Corporal Middleton obtained a search warrant to search the R.V., and during the search, he found numerous children's movies and video games. He also found a home videotape taken of S.D.'s sister, W.D., who was twelve years old at the time. The videotape showed W.D. getting into and out of the shower in Ward's R.V. Corporal Middleton, in addition, found approximately seventy compact disks containing thousands of images of child pornography. On December 14, 2005, a felony information was filed in Pulaski County charging Ward with the rape of S.D.

A pretrial hearing was held on April 24, 2006, regarding the State's notice of intent to introduce evidence under Rule 404(b) of the Arkansas Rules of Evidence. The State sought to introduce at trial the videotape of W.D. getting into and out of the shower as well as samples of the photographs contained on the compact disks found in Ward's R.V. The following morning, before the trial

began, the circuit court ruled that the videotape of W.D. could be admitted during the guilt phase of the trial but that the photographs could not be.

Evidence was presented at the guilt phase of the trial, and the jury returned a verdict of guilty. During the sentencing phase of the trial, the circuit court allowed the State to introduce the pornographic photographs that it disallowed during the guilt phase. The jury returned a sentence of life imprisonment. From this conviction and sentence, Ward appeals.

Ward first argues that there was insufficient evidence presented at trial to support his rape conviction. Specifically, he maintains that there was insufficient evidence to prove that he actually penetrated S.D. Ward contends that S.D.'s testimony regarding where and how she was penetrated was mere speculation and conjecture and insufficient as a matter of law.

We first observe that defense counsel moved for a directed verdict of acquittal at the end of the State's case on the basis that the State had not met its burden of proof that Ward actually penetrated S.D. The motion for directed verdict was renewed at the end of all the evidence on the same grounds. We treat a motion for directed verdict on appeal as a challenge to the sufficiency of the evidence. *See Young v. State*, 370 Ark. 147, 257 S.W.3d 870 (2007). We will affirm the circuit court's denial of a motion for directed verdict if there is substantial evidence, either direct or circumstantial, to support the jury's verdict. *See id.* This court has repeatedly defined substantial evidence as "evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture." *Id.* at 151, 257 S.W.3d at 875. Furthermore, "[t]his court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered." *Id.*

In rape cases, we have held that there is sufficient evidence to support a conviction if the victim gives "a full and detailed accounting of the defendant's actions." *White v. State*, 367 Ark. 595, 599, 242 S.W.3d 240, 245 (2006). Uncorroborated testimony of a rape victim is sufficient evidence to support a conviction. *See Gillard v. State*, 366 Ark. 217, 234 S.W.3d 310 (2006). Inconsistencies in the rape victim's testimony are matters of credibility that are left for the jury to resolve. *See id.* The jury may accept or reject testimony as it sees fit. *See id.*

Ward was convicted under Ark. Code Ann. § 5-14-103(a)(1)(C)(i) (Supp. 2003), which provides that "[a] person

commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person . . . [w]ho is less than fourteen (14) years of age." Deviate sexual activity is defined as "any act of sexual gratification involving . . . [t]he penetration, however slight, of the anus or mouth of one person by the penis of another person; or . . . [t]he penetration, however slight, of the labia majora or anus of one person by any body member or foreign instrument manipulated by another person." Ark. Code Ann. § 5-14-101(1)(A), (B) (Supp. 2003).

S.D. testified during direct examination that Ward lived in an R.V. and that she, her sister, W.D., and some of their friends would go to Ward's R.V. on occasion to play video games and watch movies. She testified that there were curtained bunk beds in the R.V. and that each bunk contained a mattress as well as a television set, video games, and a DVD player. S.D. testified that during the last night she, her sister, W.D., and her friends stayed overnight with Ward in his R.V., Ward came to her bunk bed where she was playing a video game alone. When she turned around, he told her to keep playing the game, and she "smart-mouthed" him and then continued playing.

S.D. testified that she then felt him touch her in the area that she uses "to go to the rest room" and that after he touched her, she "twitched." She testified that he touched her with his hand, and she felt something go inside of her body, but she wasn't sure whether it was in the area where she used to go "number one or number two." She testified that it hurt "kind of sort of." After this, she turned around and saw him moving his shorts to cover up his "mid-section" that he used to go to the rest room. S.D. testified that she had never seen that part of a man before but that she learned what it was from the nurse at her school. She testified that she saw part of Ward's private area while he was putting it back into his shorts. S.D. further testified that Ward touched her with his private area in the "back part" of her private area and that she felt him go inside of her body and it hurt "a little bit." She told him to "get away," but she wasn't sure if he heard her, and when she turned around, he had a very serious look on his face. She testified that she didn't believe any of the other children heard her because the R.V. was very noisy.

On cross-examination, S.D. testified that Ward's "private part" went inside of her, but not that "far inside" of her and that when she turned around, she saw him "pulling it out," but quickly turned around because she did not want to see anything.

W.D.'s testimony confirmed that she and S.D. had gone to Ward's R.V. and that the bunk beds where the children would play video games and watch movies were curtained. She also testified that S.D. had "smart-mouthed" Ward on the night of the alleged rape. In addition, the videotape of W.D. getting into and out of the shower was shown to the jury, and W.D. confirmed that she was the individual in the videotape and that she was unaware that she was being filmed. Finally, there was evidence presented that Ward fled Jacksonville after learning that he was suspected of sexually assaulting a minor. This court has said that "[f]light is probative evidence of guilt." *Gillard*, 366 Ark. at 221, 234 S.W.3d at 313.

Viewing the evidence in the light most favorable to the verdict and judgment of conviction and considering only the evidence that supports the judgment, we hold that there is sufficient evidence to sustain Ward's conviction for the rape of S.D.

Ward next contends that the circuit court erred in admitting into evidence during the guilt phase of the trial the videotape of W.D. getting into and out of the shower in Ward's R.V. He maintains that this videotape should not have been introduced under the pedophile exception to Rule 404(b) of the Arkansas Rules of Evidence because Ward's videotaping of W.D. does not have a sufficient nexus to the rape allegation. He asserts that the alleged rape of S.D. would involve physical conduct and not mere voyeurism and that, therefore, the alleged rape and the videotaping of W.D. are not of sufficient similarity. Moreover, he contends that the videotape does not demonstrate any "proclivity for a specific act" of sexual intercourse with a minor and that the admission of the videotape was more prejudicial than probative.

The State responds that Ward's argument regarding the admissibility of the videotape taken of W.D. should not be addressed by this court because it was not preserved for appeal. The State contends that the circuit court's ruling on the admissibility of the videotape before trial was only a conditional ruling and that when the State moved to introduce the videotape during trial, defense counsel made no objection and thus, failed to preserve his argument for appeal. We agree.

At a pretrial hearing on April 24, 2006, defense counsel argued that the videotape of W.D. was inadmissible. The circuit court ruled from the bench at that hearing: "Counsel, at this point I'm going on just what I've been told. And from what I've been

told, these matters appear to be admissible." Defense counsel then requested that the circuit court review the videotape *in camera* before the trial.

On the morning of trial, the circuit court again ruled from the bench: "Counsel, based upon what I've been told here, at this point it seems this videotape is admissible and will be admitted at trial." During trial, however, when the State moved to introduce the videotape into evidence, defense counsel said "[n]o objection."

The State grounds its argument of non-preservation on *Byrum v. State*, 318 Ark. 87, 884 S.W.2d 248 (1994). In that case, the prosecutor sought to introduce the testimony of a witness, and when that witness was called to the stand, defense counsel requested a sidebar conference. At that conference, defense counsel informed the circuit court that if the prosecutor asked the witness about statements made by the victim, defense counsel objected based on hearsay grounds. The prosecutor answered that the witness's testimony would be admissible under the excited utterance exception to the hearsay rule. The circuit court ruled: "I believe it is excited utterance based on what I've heard about it so far." *Id.* at 93, 884 S.W.2d at 252.

On direct examination of the witness, after the trial resumed, the prosecutor asked the witness what the victim had said, and defense counsel did not object, did not request a final ruling on his previous objection, and did not move to strike the hearsay testimony. This court held that the circuit court's ruling during the bench conference was only a preliminary or qualified ruling, and because defense counsel failed to object to the testimony at trial, his argument was not preserved for appeal. *See Byrum, supra; see also Alexander v. State*, 335 Ark. 131, 983 S.W.2d 110 (1998) (issue was not preserved for appeal where defense counsel objected to witness's testimony prior to trial and circuit court gave a preliminary ruling, but when witness testified at trial, defense counsel made no objection).

Similarly, the circuit court's pretrial rulings in the instant case were preliminary, as the circuit court said "at this point I'm going on just what I've been told" and "based upon what I've been told here, at this point it seems this videotape is admissible. . . ." Because defense counsel did not object when the State sought to introduce the videotape at trial, the objection was waived. *See also Baker v. State*, 334 Ark. 330, 974 S.W.2d 474 (1998) (holding

that even if defense counsel initially makes a proper objection, he or she must renew that objection when the State attempts to introduce that evidence); *Mills v. State*, 321 Ark. 621, 906 S.W.2d 674 (1995) (objection must be contemporaneous with the alleged error, and if defense counsel objects to a question on the basis of hearsay, defense counsel must renew his objection if the same or a similar question is later asked or the initial objection is waived). We affirm on this point due to failure to preserve this issue for appeal.

For his next point, Ward argues that the pornographic photographs seized from his R.V. should not have been admitted during the sentencing phase of the trial. He insists that at the time of trial, he had not been convicted of any criminal offense regarding the photographs and that the photographs were not allowed during the guilt phase of his trial because they did not fit within the pedophile exception to Rule 404(b). He asserts that this reasoning should apply equally to the sentencing phase. Ward contends that the prejudicial impact of the photographs outweighed any probative value they might have had.

Though not raised by the State, it appears that Ward's argument regarding the admissibility of pornographic photographs seized from his R.V. during the sentencing phase of his trial is not preserved for appeal for the same reason discussed above.[1] During a sidebar conference at trial before the sentencing phase began, the prosecutor requested that he be allowed to introduce a representative portion of the pornographic photographs that were seized from Ward's R.V. Defense counsel objected. After a short recess, the circuit court ruled: "Based upon that, I have reviewed 16-97-103 of the Arkansas Code. And based upon that and some of the cases thereunder, this would be admissible."

 Next, during the actual sentencing phase of the trial, the prosecution moved to introduce the photographs, and it appears, although it is not altogether clear, that defense counsel again said "[n]o objection, Your Honor."[2] Even if defense counsel

---

[1] Though not argued by the State, Ward acknowledges in his brief that it is unclear whether defense counsel objected properly to the admission of the photographs so as to preserve the issue for appeal.

[2] There appears to be a mistake in the record. During the sentencing phase of the trial, the State, through Mr. Jones, the prosecutor in this case, moved for introduction of the

did not say, "no objection," it is clear that he raised no objection to the introduction of the photographs. Based on *Baker, supra,* and *Mills, supra,* discussed above, because defense counsel did not object when the State moved to introduce the pornographic photographs during the sentencing phase of trial, Ward's argument is not preserved for appeal and will not be addressed by this court.

In accordance with Rule 4-3(h) of the Arkansas Supreme Court Rules and Ark. Code Ann. § 16-91-113, the record has been reviewed for all objections, motions, and requests made by either party, which were decided adversely to Ward, and no prejudicial error has been found.

Affirmed.

IMBER, J., not participating.

---

photographs. The record then indicates that Mr. Jones said "[n]o objection, Your Honor." This suggests a mistake in the record. The record should have indicated that Mr. Nelson, the defense counsel, was the one who actually said "[n]o objection, Your Honor."