THE COURT : I'll say it one more time, and that's the last time I'm going to say it, I will let you represent yourself. You have that constitutional right. I am not going to micromanage the way attorneys represent their clients.
THE DEFENDANT : Well, yes, sir, I would like to represent myself.
At this point in the proceeding, Shabazz's appointed counsel handed to him the discovery he had received from the State and the motions that had been filed by counsel on his behalf. The following colloquy between the court and Shabazz occurred:
THE COURT : And I'm going to let you represent yourself, but I'm going to just give you one little spiel that I tell people that want to represent themselves. You know, you haven't been trained in the law. Do you have a college degree?
THE DEFENDANT : No, sir.
THE COURT : And you obviously haven't been to law school. I tell people all the time, I've tried 150 jury trials when I was prosecutor and I wouldn't represent myself. With that in mind, do you still wish to represent yourself?
(No response)
THE COURT : Mr. Shabazz?
THE DEFENDANT : Sir?
THE COURT : Do you still wish to represent yourself?
(No response)
THE COURT : I'll ask you one more time. Do you still wish to represent yourself?
THE DEFENDANT : Your Honor, at this - I would like to continue to proceed with [counsel] at this time-. And so I can read this thing that he has-.
Hearing that Shabazz desired to continue with appointed counsel, the court then began to reschedule the motions and jury-trial settings to a subsequent date during the month of August. When Shabazz learned that the hearing on his motions would not be heard until August, the following colloquy between the court and Shabazz occurred:
THE DEFENDANT : On August 10?
THE COURT : August 10.
THE DEFENDANT : Oh, no, sir. If-. I would proceed for myself today instead of sit in jail, Your Honor. I'd rather proceed myself today.
THE COURT : You'd like to go to trial next Tuesday?
(No response)
THE COURT : That's when your trial is set now.
THE DEFENDANT : And you said you're going to set if off to August the what?
THE COURT : Well, that's my next trial date here in this county.
THE DEFENDANT : August the what?
THE COURT : August 10, pretrial; August 23, trial. I'm in even months for my jury trials. Judge Yeargan is odd months.
THE DEFENDANT : If I represent myself, when can my hearings - when can my motions be ruled on?
THE COURT : Today.
THE DEFENDANT : You'll rule on my motion today?
THE COURT : I will.
*278 THE DEFENDANT : Well, -. And there's no other way for my motion to be ruled unless I dismiss counsel?
THE COURT : Yeah. You can't - If you have an attorney, he files the pleadings for you. If you don't have an attorney, you file - you act as your own attorney and you file the pleadings. You see, because if you're filing them and your attorney's filing them, they could be inconsistent or conflicting.
THE DEFENDANT : And there's no way-.
THE COURT : So your choice is represent yourself, which I would not recommend under any circumstances, go to trial next Tuesday, motions today; or I'll continue your case, leave [counsel] on, and we'll have your pretrial August 10 and your trial August 23.
THE DEFENDANT : Well, Your Honor, I'd like to represent myself if you'll rule on my motions today.
THE COURT : Okay. You all ready?
After a recess, the court began the hearing on the motion to suppress with the following colloquy:
THE COURT : Are you ready to go forward on your motion to suppress?
THE DEFENDANT : Yes, sir.
THE COURT : I see that you filed a motion to suppress evidence and dismiss. Any other motions that you have today?
THE DEFENDANT : No, sir.
THE COURT : Let me look. Here's something else that you filed. Let me get to it. Oh, that's just -. That's the only motion. Are you ready to go forward? Do you have any witnesses?
....
THE COURT : Before we go forward, we had a long discussion earlier today, and I know I've seen a lot of people since then, and you made a decision --. After I questioned you, you made a decision that you think it's in your best interest to represent yourself. Is that correct?
THE DEFENDANT : Yes, sir.
[ DEFENSE COUNSEL ]: So -
THE COURT : Do you want [defense counsel] standing close in case you have questions? Do you want him to assist you?
THE DEFENDANT : If he would like -. If he wants to, I don't have any problem with it.
THE COURT : I'll ask him to stand close and be available if you would like?
THE DEFENDANT : It's okay with me.
THE COURT : Okay. [Defense counsel], just have a seat.
[ DEFENSE COUNSEL ]: Yes, sir.
The trial court then held the suppression hearing. Shabazz conducted the cross-examination of all the State's witnesses. Defense counsel was on hand during the questioning, but it does not appear that Shabazz requested his assistance. In fact, defense counsel left the courtroom to take a phone call during the questioning of one of the State's witnesses.
After the State rested its case, the court asked if Shabazz had any witnesses he wished to call. Shabazz indicated that there was additional information that he needed in order to go forward with his defense. The following colloquy took place:
[ PROSECUTOR ]: State rests.
THE COURT : Mr. Shabazz, call your first,
THE DEFENDANT : Oh.
THE COURT : Do you wish to testify?
THE DEFENDANT : No. You said the next witness.
THE COURT : Or you can make legal arguments.
THE DEFENDANT : Your Honor, is- could I see the law on - *279 [ PROSECUTOR ]: I just want to clarify, he's not going to call witnesses before we start going-
THE COURT : Are you going to call any witnesses?
THE DEFENDANT : I would like more physical evidence, the logs at the time -
THE COURT : Well, let me ask you -
THE DEFENDANT : At the time -
THE COURT : Stay focused on one question at a time. Do you wish to call any witnesses?
THE DEFENDANT : No more physical -
THE COURT : I'm sorry?
THE DEFENDANT : No more witnesses.
THE COURT : Okay. You have no witnesses.
THE DEFENDANT : No more witnesses, no, sir.
THE COURT : Do you wish to make a legal argument to me?
THE DEFENDANT : Your Honor, is there any way I could see the log on certification and radar guns?
THE COURT : You're representing yourself. You're going to have to find all that information.
THE DEFENDANT : So I would have to find that information on my own?
THE COURT : It would be incumbent on you and your burden to bring that forward if you feel it was necessary at this hearing or trial.
THE DEFENDANT : Is there any way we could set a continuance for a few days and - so I could get that evidence?
THE COURT : It was your choice to go forward on the suppression hearing today, Mr. Shabazz. Do you have any legal arguments you wish to make concerning the - your motion to suppress?
Shabazz, with the help of standby counsel, then attempted to articulate his legal basis for suppression. At the conclusion of the hearing, the trial court denied his motion. At that point, Shabazz informed the court he would need help at trial, and the trial court reappointed defense counsel to represent him at trial. Shabazz was found guilty at trial and sentenced to thirty years. In this appeal, Shabazz argues that the suppression hearing was a critical stage of the proceedings, that he did not knowingly and intelligently waive his right to counsel at that hearing, and that he should be granted a new trial.
III. Analysis
Our standard of review is whether the trial court's finding that the waiver of rights was knowingly and intelligently made was clearly against the preponderance of the evidence. Pierce v. State , 362 Ark. 491, 209 S.W.3d 364 (2005).
A. Critical-Stage Analysis
The United States Supreme Court has provided the following case law concerning our critical-stage analysis: (1) A criminal defendant has a Sixth Amendment right to an attorney at every critical stage of the proceedings. Hammett v. Texas , 448 U.S. 725, 100 S.Ct. 2905, 65 L.Ed.2d 1086 (1980) ; (2) A stage is a critical stage in a criminal proceeding if the substantial rights of the criminal defendant may be affected. Mempa v. Rhay , 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967) ; and (3) The complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice because the adversary process itself has been rendered presumptively unreliable. Roe v. Flores-Ortega , 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). Our supreme court has held that a critical stage is characterized by an opportunity for the exercise of judicial discretion or when certain legal rights may be lost if not exercised at *280 that stage. Anderson v. State , 367 Ark. 536, 242 S.W.3d 229 (2006).
We hold that a suppression hearing is a critical stage of the proceeding because if the suppression court determines that evidence is admissible, that determination is final, conclusive, and binding at trial. In fact, the court's decision on a motion to suppress may often spell the difference between a conviction or an acquittal. Thus, we conclude that the Sixth Amendment right to counsel applies to suppression hearings. The issue then becomes whether Shabazz validly waived that right.
B. Waiver Analysis
In Faretta v. California , 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the United States Supreme Court held that before an accused manages his or her own defense, the accused must first "knowingly and intelligently" waive the right to counsel. Furthermore, the trial court maintains a weighty responsibility in determining whether an accused has "knowingly and intelligently" waived this right. Johnson v. Zerbst , 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) ; Murdock v. State , 291 Ark. 8, 722 S.W.2d 268 (1987). Every reasonable presumption must be indulged against the waiver of fundamental constitutional rights. Brewer v. Williams , 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).
The burden is on the State to show that an accused voluntarily and intelligently waived his or her fundamental right to the assistance of counsel. Hatfield v. State , 346 Ark. 319, 57 S.W.3d 696 (2001). We determine whether an intelligent waiver of the right to counsel has been made in each case on the particular facts and circumstances, including the background, the experience, and the conduct of the accused. Bledsoe v. State , 337 Ark. 403, 989 S.W.2d 510 (1999). While a case-by-case approach is used to determine intelligent waiver of counsel, a specific warning of the dangers and disadvantages of self-representation-or a record showing that the defendant possessed such required knowledge from other sources-is required to establish the validity of a waiver. Id. Our supreme court has held that the "constitutional minimum" for determining whether a waiver was knowing and intelligent is that the accused be made sufficiently aware of his or her right to have counsel present and of the possible consequences of a decision to forgo the aid of counsel. Id.
We hold under these particular facts and circumstances that Shabazz's waiver was not knowingly or intelligently made. The court was the first to suggest that Shabazz proceed pro se. Shabazz initially indicated that he did not want to proceed pro se; rather, he simply indicated his unhappiness with his current counsel and wanted other counsel appointed. Only when the court informed him that he could not have other appointed counsel and that his trial date would be postponed if he continued with current counsel did Shabazz seemingly agree to proceed pro se; but even then, his agreement was tenuous. We also note there was limited inquiry into his educational history or background with the criminal-justice system. In this regard, the court inquired only if Shabazz had a college degree, to which Shabazz answered no. The court never inquired into Shabazz's experience with the criminal-justice system.[1] Moreover, while the trial court *281 explained that even with his own experience in criminal matters he would not represent himself, we conclude that this was inadequate to explain the legal pitfalls of self-representation. The trial court did not adequately explain the risks or the consequences of proceeding without counsel; nor did the court inform Shabazz of the danger of proceeding so quickly with the suppression hearing without the benefit of counsel or the completion of discovery. In short, we conclude that there was simply an insufficient investigation into whether Shabazz's willingness to proceed was knowingly or intelligently asserted, and the trial court's questioning as to his wish to proceed pro se did not meet the constitutional minimum as set forth by our supreme court.
The State contends that because this was a pretrial proceeding, this court should apply the "less searching or formal colloquy" standard set forth in Iowa v. Tovar , 541 U.S. 77, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004). The State essentially argues that Tovar mandates "a less searching or formal colloquy" concerning the Sixth Amendment right to counsel in all pretrial proceedings. We disagree.
The issue in Tovar is distinguishable from this appeal. Tovar was arrested and charged with third-offense operating while intoxicated (OWI), a class D felony. To sustain this charge, the State of Iowa would need to prove prior OWI convictions as a sentencing enhancement. Tovar moved to preclude the use of his first OWI conviction, because it was the result of an uncounseled guilty plea. If successful in this preclusion, Tovar could be found guilty of only an aggravated misdemeanor. Thus, Tovar involved a collateral attack on an uncounseled conviction by guilty plea and, as a collateral attack, it was Tovar's burden to prove that he did not competently and intelligently waive his right to assistance of counsel. In fact, the Supreme Court in Tovar noted that it was addressing a very narrow question: "Does the Sixth Amendment require a court to give a rigid and detailed admonishment to a pro se defendant pleading guilty of the usefulness of an attorney, that an attorney may provide an independent opinion whether it is wise to plead guilty and that without an attorney the defendant risks overlooking a defense?" Tovar , 541 U.S. at 91, 124 S.Ct. 1379. The Supreme Court answered that very narrow question no. We do not have the same narrow issue in this appeal, and Shabazz, unlike Tovar, did not have the burden to prove anything concerning his Sixth Amendment right to counsel. Rather, the State had the burden to prove that his waiver was knowingly and intelligently made.
We conclude that Tovar does not stand for a bright-line mandate that "a less searching or formal colloquy" concerning the Sixth Amendment right to counsel applies in all pretrial proceedings. The State's argument treats all pretrial proceedings the same. They are not. Tovar involved a pretrial plea hearing. Here, we have a pretrial suppression hearing. They are very different in their composition. Unlike a plea hearing, evidence is introduced at a suppression hearing. As such, evidentiary rules apply; witnesses are called and examined; and certain trial tactics and strategies might reasonably be employed for the benefit of the defendant. In this way, suppression hearings are more akin to a trial in which the more rigid Faretta analysis applies. While the Supreme Court in Tovar did indicate that a more relaxed approach to the Sixth Amendment may suffice at some earlier stages of the criminal process, it reiterated *282 the more "pragmatic approach to the waiver question." Id. at 90, 124 S.Ct. 1379 (quoting Patterson v. Illinois , 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988) ). In Patterson , the Supreme Court stated that courts must look to "what purposes a lawyer can serve at the particular stage of the proceedings in question, and what assistance he could provide to an accused at that stage," in order to "determine the scope of the Sixth Amendment right to counsel, and the type of warnings and procedures that should be required before a waiver of that right will be recognized." Patterson , 487 U.S. at 298, 108 S.Ct. 2389. We hold that because suppression hearings, unlike plea hearings, more closely resemble a trial, a more relaxed or less formal inquiry is not sufficient. Therefore, the more heightened Faretta standard of review governing trials should control.
The State argues that even if the trial court erred in allowing Shabazz to proceed pro se, the decision was harmless because Shabazz was provided the assistance of standby counsel. The State is correct that the assistance of standby counsel can rise to such a level that the defendant is deemed to have had counsel for his or her defense, thereby mooting any assertion of involuntary waiver. Hatfield , 346 Ark. 319, 57 S.W.3d 696. Whether such assistance rises to that level is a question that must be answered by looking at the totality of the circumstances. Id. Our cases on this issue demonstrate that the assistance must be substantial, such that counsel was effectively conducting a defense. Id. Viewing the totality of the circumstances, we hold that the role of standby counsel in this case was not substantial. Counsel did not participate in the questioning of the witnesses and even left the courtroom at one point. While counsel did provide some limited assistance to Shabazz, such assistance was not so substantial as to render harmless the improper waiver of counsel.
Shabazz contends that the violation of his right to counsel should result in a new trial. The State, on the other hand, argues that Shabazz is entitled only to a new suppression hearing. We disagree.
Our supreme court acknowledged in Young v. State , 370 Ark. 147, 257 S.W.3d 870 (2007), that as a general rule, most trial errors, including constitutional ones, do not automatically require reversal of a criminal conviction. Unlike ordinary trial errors, however, structural defects in the constitution of the trial mechanism defy analysis by harmless-error standards. See Sullivan v. Louisiana , 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (citing Arizona v. Fulminante , 499 U.S. 279, at 309 (1991) ). The Supreme Court has recognized that the Sixth Amendment right to counsel is among those "constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error," Chapman v. California , 386 U.S. 18, at 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In other words, when counsel is absent during a critical stage, such as here, the defendant need not show prejudice. Rather, prejudice is presumed "because the adversary process itself has become presumptively unreliable." Roe v. Flores-Ortega , 528 U.S. 470, 483, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) (quoting United States v. Cronic , 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) ) (quotation marks omitted).
We hold that the denial of counsel at a suppression hearing is a structural defect requiring absolute reversal. We are not alone in this conclusion. The Third Circuit Court of Appeals has also determined that the proper remedy for a Sixth Amendment denial-of-counsel violation *283 during pretrial proceedings is a new trial. See Henderson v. Frank , 155 F.3d 159, 171 (3d Cir. 1998). In Henderson , the Third Circuit found that the deprivation of counsel at a suppression hearing resulted in the loss of "much more than an opportunity to have his confession suppressed." Id. at 169. Instead, Henderson suffered a "procedural, structural defect which may have had repercussions in plea bargaining, discovery and trial strategy that would not be cured by a new suppression hearing alone" for the "existence of structural defects ... requires automatic reversal of the conviction because they infect the entire trial process." Id. at 169-70, 171 (quoting Brecht v. Abrahamson , 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) ). As a result, the Third Circuit concluded that "the deprivation of Henderson's right to counsel at the suppression hearing is one of the structural defects in the constitution of the trial mechanism, which defy analysis by harmless-error standards" and thus require a new trial to correct. Id. at 170 (quoting Fulminante , 499 U.S. at 309, 111 S.Ct. 1246 ). We acknowledge that the Henderson case is a federal habeas corpus case; however, we do not believe that fact changes the fundamental premise supporting its conclusion.
Moreover, we find the cases cited by the State distinguishable. None of the cases cited by the State involved a Sixth Amendment right to counsel; therefore, they simply do not involve the type of structural error at issue here. See Young v. State , 370 Ark. 147, 257 S.W.3d 870 (2007) (insufficient proof of voluntariness of confession); George v. State , 356 Ark. 345, 151 S.W.3d 770 (2004) (suppression hearing not included in the record); Moore v. State , 303 Ark. 1, 791 S.W.2d 698 (1990) (failure to conduct a Denno[2] hearing); Taffner v. State , 2018 Ark. 99, 541 S.W.3d 430 (failure to hold an in camera Ritchie[3] review of DHS file).
We hold that an accused is entitled to relief from a conviction whenever the proceedings indicate the unfairness of trial without the help of a lawyer. See Gibson v. State , 298 Ark. 43, 764 S.W.2d 617 (1989). That is the case here. Therefore, we reverse Shabazz's conviction and remand for retrial.
Reversed and remanded.
Gruber, C.J., and Abramson, Gladwin, Hixson and Murphy, JJ., agree.

The State in its brief refers this court to Shabazz's criminal history and his apparent self-representation in other previous criminal or postconviction matters; however, there is no evidence that the trial court was aware of this information at the time it decided to allow Shabazz to represent himself.

Jackson v. Denno , 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

Pennsylvania v. Ritchie , 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987).