Charles Edward GOODWIN  *v.*  STATE of Arkansas

CR 07-906                                    281 S.W.3d 258

Supreme Court of Arkansas
Opinion delivered March 20, 2008

*Robert N. Jeffrey*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Farhan Khan*, Ass't Att'y Gen., for appellee.

R OBERT L. BROWN, Justice. Appellant Charles Edward Goodwin appeals his judgment of conviction for aggravated robbery and attempted capital-felony murder and his sentence of life imprisonment for the attempted capital murder.[1]

The facts in this case are gleaned from witnesses at trial and Goodwin's statement to police officers. At approximately 10:15 a.m. on June 7, 2006, Betty Word, the owner of the Fashion Center in Bearden, was working at the store when a longtime customer, Rosetta Milton, came in and paid forty dollars towards her account. While Mrs. Milton was looking at dresses, a thin black man dressed in dark clothes, wrap-around sunglasses, and a Nike headband came into the store and began shopping. Both Mrs. Word and Mrs. Milton identified this man as Goodwin. After Mrs. Milton left the store, Goodwin continued shopping and asked Mrs. Word several questions about her merchandise. He then asked Mrs. Word whether she knew who he was, to which she responded that he was Virginia Marshall's son. They continued to chat for a few minutes. She then turned around and began putting shoes on a shelf.

Goodwin approached Mrs. Word with one hand behind his back and said, "This is a robbery." Mrs. Word offered to get him as much money as he wanted, but he said that, since she knew who he was, he would have to kill her. He took her into a back room and started strangling her. When she continued to struggle, he tried to suffocate her with plastic bags. Eventually, he struck her three times on the head with an unidentified object. Thinking she had been shot, she fell to the floor, bleeding, and pretended to be dead.

Goodwin left the back room but came back later and kicked Mrs. Word. She remained motionless, and he checked her pockets. He then left the store. Law enforcement officers from the Ouachita County Sheriff's Department and the Arkansas State Police, as well

---

[1] Because the circuit court found that "the elements of capital murder include the offense of aggravated robbery," Goodwin was not sentenced for his conviction of aggravated robbery.

as the Bearden City Marshall, responded to the scene after Mrs. Word was discovered by a friend who worked at a nearby store. Mrs. Word was conscious when the police officers arrived. Although she did not know Goodwin's real name and expressed some confusion as to his nickname, she identified her attacker as Virginia Marshall's tall, slender son. The forty dollars paid by Mrs. Milton and all of the quarters from the cash register were missing. Goodwin was arrested by police officers that afternoon. He was wearing dark clothes and had a Nike headband in his pocket. Both Mrs. Word and Mrs. Milton later identified Goodwin in a photo array prepared by police officers.

After his arrest, Goodwin made a videotaped statement to police officers, in which he said that he had gone to a drug dealer on the morning of the robbery and had gotten some crack cocaine. He stated that, after smoking the cocaine, he began to consider how he was going to get money to buy some more. He admitted to going into the Fashion Center and talking to Mrs. Word, eventually telling her that he was going to rob her. He stated that she told him she did not have much money at the store but would take him to the bank. He also admitted taking her into the back room and pushing her hard before taking money from the cash register.

Defense witnesses, however, had a different version of the events of June 7, 2006. Goodwin's sister and her twelve-year-old son testified that they were with Goodwin at his stepfather's house between 11:00 a.m. and 12:30 p.m. on the day of the robbery. Goodwin also testified in his own defense to the effect that he was awakened at around 10:30 or 10:45 a.m. on the day of the robbery by his mother, because he had a phone call from his wife. According to Goodwin's version of events, after talking to his wife for about ten minutes, he left the house and got crack cocaine from local drug dealers. He stated that, after obtaining the drugs, he returned to his stepfather's house at 11:00 a.m. and smoked crack on the back porch. At around 12:30 or 1:00 p.m., he testified, he left the house for a while. He further testified that, when he returned to the house, his sister told him that people were saying that he had shot Mrs. Word, and he fled before being arrested. Goodwin also testified that the only reason that he made an incriminating statement on the day of the robbery was that police had coerced him and threatened him with violence.

On June 20, 2006, Goodwin was charged with aggravated robbery, attempted capital murder, possession of a firearm by a convicted felon, theft of a firearm, and forgery.[2]

One of the issues that arose before trial in a motion to suppress filed by Goodwin was the voluntariness of his videotaped statement to police. A hearing on Goodwin's motion to suppress was held on January 22, 2007. At that hearing, Investigator Terry Smith of the Arkansas State Police and Sergeant James Bolton of the Ouachita County Sheriff's Department, the two police officers who interrogated Goodwin, testified about the circumstances surrounding Goodwin's statement. They testified that Goodwin was read and signed a form advising him of his *Miranda* rights, that he did not appear to be under the influence of drugs or alcohol, that he was not promised anything in exchange for his statement, and that he was not threatened with force at any time. Investigator Smith, who was primarily responsible for interviewing Goodwin, testified that he lied to Goodwin during the investigation, telling him falsely that the events at the Fashion Center had been captured on videotape. He also testified that, before the recorded portion of his interview with Goodwin, he left the interrogation room and called the prosecuting attorney. Upon his return to the interview room, he told Goodwin that he had talked to the prosecutor and told the prosecutor that Goodwin was being honest and remorseful.

Goodwin also testified at the suppression hearing. He denied having committed the crimes with which he was charged and stated that Sergeant Bolton had threatened him with physical violence if he did not confess. He further testified that Sergeant Bolton told him that he would get the electric chair if he did not confess and that Investigator Smith told him what to say in his statement.

Having viewed the video of Goodwin's statement, the circuit court denied the motion to suppress, saying:

> Looking at the video, the defendant, I mean, he just presented — it looked to me as if the defendant was speaking from his heart. It didn't come across as if someone had coached him. I mean, he was too good. I saw, thought viewed [sic] some pain on his part. I

---

[2] An amended criminal information was filed on January 2, 2007, involving the same charges.

viewed true remorse, I believe, on his part, regret. He would leave an area and then come back to some remorse and regret on the video.

I'm not convinced at all that defendant's statement was the result of threat, intimidation, coercion. I'm satisfied that it's voluntary. It was voluntarily and intelligently given.

. . . .

So I'm not convinced at all by the defendant's version at this stage of the facts, credibility under the circumstances. I'm satisfied that this is voluntary. There was nothing inappropriate that occurred that led to the defendant giving this statement.

A jury trial was held on January 25, 2007. The jury convicted Goodwin of aggravated robbery and attempted capital murder. Because he had five prior felonies, he was sentenced as a habitual offender. The jury returned a verdict of life imprisonment, and he was sentenced accordingly by the circuit judge.[3]

## I. Sufficiency of the Evidence

Goodwin first challenges the circuit court's denial of his motion for a directed verdict and argues that there was insufficient evidence to show that he intended to commit a theft. Intent to commit theft, he points out, was a necessary element of his conviction for aggravated robbery and the commission of an aggravated robbery, in turn, was a necessary element of his conviction for attempted capital-felony murder. Goodwin notes that there was no physical evidence connecting him to the crime. He concedes that Betty Word testified that he told her it was a robbery but argues that she did not testify that he took any property.

The standard of review for the denial of a motion for a directed verdict is well established:

We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. This court has repeatedly held that in

---

[3] After Goodwin was sentenced to life imprisonment, the prosecutor moved to nolle prosequi the remaining charges of possession of a firearm by a convicted felon, theft of a firearm, and forgery. This motion was granted by the circuit court on March 1, 2007.

reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. We affirm a conviction if substantial evidence exists to support it. Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. . . . The credibility of witnesses is an issue for the jury and not the court. The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence.

*See, e.g., Strong v. State*, 372 Ark. 404, 409, 277 S.W.3d 159, 163-64 (2008) (citations omitted). In determining whether there was substantial evidence to support the verdict, this court looks at all of the evidence presented, including any evidence that is alleged to have been admitted in error. *Davis v. State*, 318 Ark. 212, 219, 885 S.W.2d 292, 296 (1994).

Goodwin is correct that his convictions for aggravated robbery and for attempted capital-felony murder required the State to introduce substantial evidence of intended theft. *See* Ark. Code Ann. § 5-12-103 (Repl. 2006) ("A person commits aggravated robbery if he or she commits robbery . . . and the person . . . [i]nflicts or attempts to inflict death or serious physical injury upon another person."); Ark. Code Ann. § 5-12-102 (Repl. 2006) ("A person commits robbery if, with the purpose of committing a felony or misdemeanor theft . . . the person employs or threatens to immediately employ physical force upon another person."); Ark. Code Ann. § 5-10-101 (Repl. 2006) ("A person commits capital murder if . . . [t]he person commits or attempts to commit . . . [r]obbery . . . and . . . [i]n the course of an in furtherance of the [robbery] or in immediate flight from the [robbery], the person or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life."). Under Arkansas law, "[a] person commits theft of property if he or she knowingly . . . [t]akes or exercises unauthorized control over . . . the property of another person, with the purpose of depriving the owner of the property." Ark. Code Ann. § 5-36-103(a)(1) (Repl. 2006).

The State presented substantial evidence of Goodwin's intent to commit theft. First, there was Mrs. Word's testimony, in which she stated that Goodwin told her that he was going to rob

her. Then there was the fact that two twenty-dollar bills and some quarters were missing from the Fashion Center after the attack. There was also Goodwin's own videotaped statement in which he admitted to taking money from the cash register. There can be no doubt that this evidence, when looked at in the light most favorable to the State, was sufficient to allow a jury, without resorting to speculation or conjecture, to come to the conclusion that Goodwin intended a theft. We affirm on this point.

## II. Motion to Suppress

Goodwin next argues that the circuit judge erred in denying his motion to suppress the statement he made to police officers. Goodwin cites three arguments in support of his contention that the statement was involuntary. Initially, he points to the fact that one of the officers interrogating him told him that the robbery had been videotaped, which was not true. Then, Goodwin argues that, when the same officer told Goodwin that he had told the prosecuting attorney that Goodwin was being truthful and remorseful, he implied that Goodwin could receive leniency if he made a statement. Goodwin urges that there was no reason for the officer to tell him that he had talked to the prosecuting attorney other than to make him believe that he would get leniency if he made a statement. As a third argument, Goodwin asserts that another police officer made direct threats against him, telling him that he would be beaten and would get the electric chair if he failed to confess to the crimes.

This court has said when analyzing a denial of a motion to suppress:

> In reviewing the denial of a motion to suppress a statement, we conduct a *de novo* review based on the totality of the circumstances, reviewing findings of historical fact for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court and proper deference to the circuit court's findings. A statement made while in custody is presumptively involuntary, and the burden is on the State to prove by a preponderance of the evidence that a custodial statement was given voluntarily and was knowingly and intelligently made. In order to determine whether a waiver of *Miranda* rights is voluntary, this court looks to see if the confession was the product of free and deliberate choice rather than intimidation, coercion, or deception.

*Young v. State*, 370 Ark. 147, 153, 257 S.W.3d 870, 876–77 (2007) (citations omitted).

The fact that a police officer made an untrue statement during the course of an interrogation does not necessarily make an "otherwise voluntary confession inadmissible." *Conner v. State*, 334 Ark. 457, 469, 982 S.W.2d 655, 661 (1998) (quoting *Frazier v. Cupp*, 394 U.S. 731 (1969)). Rather, "a misrepresentation of fact does not render a statement involuntary so long as the means employed are not calculated to procure an untrue statement and the confession is otherwise freely and voluntarily made with an understanding by the accused of his constitutional rights." *Id.* (quotation omitted).

Regarding promises of leniency, "if a police official makes a false promise which misleads a prisoner, and the prisoner gives a confession because of that false promise, then the confession has not been voluntarily, knowingly and intelligently made." *Id.* at 469, 982 S.W.2d 655, 661. This court employs a totality-of-the-circumstances test "[i]n determining whether there has been a misleading promise of reward. . . . The totality is subdivided into two main components, first, the statement of the officer and second, the vulnerability of the defendant." *Id.* at 469-70, 982 S.W.3d at 661. If the officer has made "unambiguous false promises of leniency," then any resulting statement is involuntary regardless of the vulnerability of the defendant. *Brown v. State*, 354 Ark. 30, 33, 117 S.W.3d 598, 600 (2003).

If, on the other hand, "the officer's statement is ambiguous, making it difficult . . . to determine if it was truly a false promise of leniency," the court must examine the defendant's vulnerability. *Id.* at 33-34, 117 S.W.3d at 600. This court has enumerated four factors that are among those to be considered in determining a defendant's vulnerability: "1) the age, education, and intelligence of the accused; 2) how long it took to obtain the statement; 3) the defendant's experience, if any, with the criminal–justice system; and 4) the delay between the *Miranda* warnings and the confession." *Id.* at 34, 117 S.W.3d at 600. Because "the object of the rule is not to exclude a confession of truth, but to avoid the possibility of a confession of guilt from one who is, in fact, innocent," a person seeking to have a statement excluded on the basis that a false promise was made must show that the confession induced by the false promise was untrue. *Williams v. State*, 363 Ark. 395, 405, 214 S.W.3d 829, 834 (2005).

■ Goodwin's first ground for excluding his statement is that the police falsely told him that the robbery was caught on videotape. Because this false statement was not "calculated to procure an untrue statement," it does not render Goodwin's statement involuntary. *Conner*, 334 Ark. at 469, 982 S.W.2d at 661. On the contrary, telling Goodwin that the robbery had been videotaped was calculated to procure an accurate statement, since Goodwin believed that police already knew what had happened and would know if he was lying. There was no error committed by the circuit judge in this regard.

Goodwin's second ground for excluding his statement is that the police officer who interrogated him made a false promise of leniency. It is undisputed that the officer who obtained Goodwin's statement told him that it would be best for him to be truthful and that he needed to be remorseful. It is also undisputed that the officer told Goodwin that he had talked to the prosecutor and had told the prosecutor that Goodwin was remorseful and was being honest. Goodwin asserts that the only reason for the officer to have told him about the conversation with the prosecutor was to indicate that he would receive leniency if he confessed and was remorseful.

■ The police officer's statements to Goodwin were, at most, ambiguous as to whether they constituted a false promise of leniency. Here, the police officer truthfully told Goodwin that he had told the prosecutor that Goodwin was being remorseful and seemed to be telling the truth. Where a police officer does not represent that he or she has the power to promise a reduced sentence but agrees to tell the prosecutor that a suspect has cooperated, it does not, without more, render a subsequent statement involuntary. *See Pilcher v. State*, 355 Ark. 369, 381, 136 S.W.3d 766, 772 (2003). The officer also told Goodwin that it would be better for him if he told the truth and was remorseful. This was not an unambiguous promise.

Neither was Goodwin particularly susceptible to having his will overborne. *See Brown v. State*, 354 Ark. at 33–34, 117 S.W.3d at 600. Goodwin was thirty-four years old at the time of the offense, and there is no indication that he has a below–normal intelligence. The statement was taken within a few hours after Goodwin's arrest and after only a short period of interrogation. Furthermore, Goodwin had a good deal of prior experience with the criminal-justice system, as evidenced by his prior convictions.

Finally, Goodwin was advised of his *Miranda* rights and waived them some time before making his videotaped statement. Immediately before making his videotaped statement, he was asked again if he had signed and initialed the waiver form, and he answered that he had. This argument has no merit.

Goodwin's last reason for excluding his statement is that police officers threatened him with the electric chair and with physical violence if he did not confess. Although Goodwin testified that such threats were made, the police officers involved in his interrogation denied it. Nor was there any evidence of threats on the videotaped portion of Goodwin's statement or any physical evidence of force being used on Goodwin. As this court has previously stated:

> The evaluation of the credibility of witnesses who testify at a suppression hearing about the circumstances surrounding an appellant's custodial confession is for the trial judge to determine, and this court defers to the position of the trial judge in matters of credibility. Conflicts in the testimony are for the trial judge to resolve, and the judge is not required to believe the testimony of any witness, especially that of the accused, since he is the person most interested in the outcome of the proceedings.

*Bell v. State*, 371 Ark. 375, 384, 266 S.W.3d 696, 704 (2007) (citations omitted). The circuit judge believed the police officers as already noted in this opinion. We conclude that the circuit judge did not abuse his discretion in finding that Goodwin's statement was not the result of threats and intimidation.

### III. Foundation for Photographs

For his last point on appeal, Goodwin argues that certain photographs of the injuries sustained by Mrs. Word were erroneously admitted into evidence over his objection. Although conceding that Sergeant Bolton, who was present at the crime scene, described what was depicted in each photograph, Goodwin asserts that there was no testimony that the photographs fairly and accurately represented Mrs. Word's injuries. He argues, as a result, that a foundation was not properly established for the admission of Mrs. Word's photographs under Rule 901 of the Arkansas Rules of Evidence.

Rule 901(a) of the Arkansas Rules of Evidence (2007) reads that "[t]he requirement of authentication or identification as a

condition precedent to admissibility is satisfied by evidence suffi-
cient to support a finding that the matter in question is what its
proponent claims." The photographs that Goodwin challenges
were admitted upon the authentication of Sergeant Bolton. Al-
though Sergeant Bolton represented that the pictures were taken
by the Sheriff's department, it was not clear from his testimony that
he was present when the pictures were taken or able to verify that
the photographs taken of Mrs. Word were an accurate represen-
tation of Mrs. Word's injuries. This error, however, was, to a great
extent, invited by Goodwin's counsel during his objection to the
admission of the photographs. When asked what his foundation
contention specifically was, defense counsel responded:

> Well, I don't want to say too much because I don't want to help the
> State, but I just contend under the rules that he hasn't asked or laid
> a sufficient foundation by questioning this witness as to these
> photographs.

■ Had defense counsel objected with specificity to Ser-
geant Bolton's ability to verify that the pictures were an accurate
representation of Mrs. Word's injuries, the State could have
attempted another means of verification or could have introduced
the photographs through another witness. *See Phillips v. State,* 361
Ark. 1, 4, 203 S.W.3d 630, 632 (2005) (noting, in the context of
a directed-verdict motion, that the reason for requiring the defense
to clearly and specifically articulate deficiencies in the State's case
is to allow the circuit court to provide an opportunity for the State
to rectify the deficiency).

At any rate, the error was harmless. As this court has
previously noted:

> [E]ven when a circuit court errs in admitting evidence, this court
> will affirm the conviction and deem the error harmless if there is
> overwhelming evidence of guilt and the error is slight. To deter-
> mine if the error is slight, this court looks to see whether the
> defendant was prejudiced by the erroneously admitted evidence.
> Prejudice is not presumed, and this court will not reverse a convic-
> tion absent a showing of prejudice by the defendant. When the
> erroneously admitted evidence is merely cumulative, there is no
> prejudice, and a conviction will not be reversed for harmless error in
> the admission of evidence.

*Eastin v. State,* 370 Ark. 10, 21-22, 257 S.W.3d 58, 67 (2007)
(citations omitted). Here, Goodwin fails to assert that any prejudice

resulted from the admission of the photographs. Moreover, the witness who testified just after Sergeant Bolton was the victim, Mrs. Word, who testified that the photographs depicted her injuries as they existed in the ambulance and at the hospital on the day of the robbery. Even if the circuit court had sustained Goodwin's objection, the photographs regarding Mrs. Word's injuries could have been admitted into evidence during Mrs. Word's testimony. We affirm the circuit judge on this point.

An examination of the record has been made in accordance with Ark. Sup. Ct. R. 4-3(h) and Ark. R. App. P.–Crim. 14, and it has been determined that there were no rulings adverse to Goodwin that constituted prejudicial error.

Affirmed.

ANNABELLE CLINTON IMBER, Justice. The State appeals from an order of the Pulaski County Circuit Court granting Appellee Theresa Webb's motion to expunge the record of her conviction for felony theft of property. For its sole point on appeal, the State asserts that the circuit court erred as a matter of law in granting the motion to expunge under Ark. Code Ann. § 16-93-303 (Repl. 2006), because Webb pled not guilty and was found guilty by the court. As this is an appeal by the State following a felony prosecution, our jurisdiction is pursuant to Ark. R. App. P.–Crim. 3(b) (2007). Because we hold that Webb's sentence is void to the extent that it is in accordance with Ark. Code Ann. § 16-93-303, we reverse and remand for new sentencing.