Robert Thomas MAXWELL *v.* STATE of Arkansas

CR 07-1318                                                285 S.W.3d 195

Supreme Court of Arkansas
Opinion delivered May 29, 2008

*William R. Simpson, Jr.*, Public Defender, and *Andy Shaw*, Deputy Public Defender, by: *Clint Miller*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Valerie Glover Fortner*, Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Robert Thomas Maxwell appeals his judgment of conviction for unlawful discharge of a firearm from a vehicle in the first degree, for which he was sentenced to life imprisonment. We affirm the judgment.

On the evening of May 8, 2006, Maxwell, whose brother, Dale Daniels, had been a resident at the Economy Inn on West Markham Street in Little Rock for several months, got into an argument with the desk clerk, David Kelso. Maxwell called the front desk and requested clean sheets for Daniels's room, but Kelso refused, citing the motel's policy of not handing out clean sheets after eleven a.m. Maxwell became irate, repeatedly shouting "you're fucking dead."

Maxwell and Daniels then came to the front desk. Kelso informed the other desk clerk, Imtiaz Khan, of the problem he was having with Maxwell, and Khan joined Kelso in the office. Khan attempted to calm Maxwell down, but Maxwell continued to threaten Kelso, stating that he was going to "go get an AK-47 and blow [Kelso's] ass away." In the end, Khan agreed to give Daniels a ten dollar refund of the money he had paid for that week's rent of his room in exchange for Daniels checking out a day early. Daniels and Maxwell retrieved Daniels's belongings and left the motel in a white four-door Lincoln, the car that Maxwell had been driving for several months.

After leaving the motel, Maxwell picked up Princess Smith, who was referred to at trial at different times as Maxwell's girlfriend, his wife, and his "common-law" wife.[1] The two went to the house of Wesley Grant, a friend of Maxwell's, and borrowed Grant's black Ford Explorer, saying that there was something wrong with Maxwell's car and that they needed to run an errand. Cedric Barnes was also at Grant's house. Barnes testified that he had brought a .380 caliber handgun with him. He testified that he left the gun on a table at Grant's house when he went to the bathroom, and when he came back, the gun, Maxwell, and Smith were gone.

Sometime after midnight, Maxwell and Smith returned to the Economy Inn in Grant's Ford Explorer. At least five shots were fired from the vehicle through the office window and into the office, one of which struck Kelso in the left shoulder and lodged in his arm. Kelso woke Khan, who called the police. Kelso was taken to the University of Arkansas for Medical Sciences Medical Center, where he was treated and released within a few hours. The bullet was not removed from his arm because of the danger of causing nerve damage.

---

[1] The record is silent about what happened to Dale Daniels.

The shooting was witnessed by a University of Arkansas for Medical Sciences police officer, Roger Blaine, who was sitting in his patrol car at a red light near the motel when he saw a black SUV stopped outside the office of the Economy Inn. He next saw muzzle flashes coming from the front passenger's side window of the SUV and heard several gun shots. Blaine and a second officer pulled the SUV over and arrested Maxwell, who was in the driver's seat, and Smith, who was in the passenger seat.

Little Rock Police officers responded shortly thereafter and found a gun in the grass in a place where it could have been thrown from the SUV. Barnes identified the gun as his gun that was taken from Grant's house on the night of the shooting. Barnes also testified that, after Maxwell was arrested, he told Barnes that he had taken Barnes's gun and that Smith had used it in the shooting. One spent shell casing was found inside the SUV, and an additional five shell casings were found outside the Economy Inn office. Bullet fragments were recovered from the motel's office and were found to have been fired from Barnes's gun.

Maxwell was charged with one count of discharging a firearm from a vehicle in the first degree in connection with the shot that hit Kelso. Maxwell was also charged with four counts of discharging a firearm from a vehicle in the second degree for the other shots that were fired into the Economy Inn office.

A two-day jury trial was held beginning on August 8, 2007. The State did not dispute that Smith might have been the shooter but argued that Maxwell was either the shooter or was an accomplice to the shooting. The State's witnesses included Kelso, Khan, the arresting UAMS police officers, a crime scene specialist, and a tool mark examiner. Grant and Barnes, Maxwell's friends from whom he obtained the car and gun, also testified for the State.

In his testimony regarding the events of the night of the shooting, Kelso described being shot as feeling like a "sting." He showed the jury the scar on his shoulder where the bullet entered and an additional grazing scar on his back. He testified that the scar itched and that one time he had pain when he tried to lift his arm. He also testified that he had discomfort at the site of the wound for a couple of days after he was shot. The State did not present any medical testimony regarding Kelso's wound.

After the State rested, Maxwell's counsel moved for a directed verdict on the basis of insufficient evidence:

Your Honor, I would move for a directed verdict in this matter. We feel the State's not met their burden of proof in showing that on or about May the 9th, 2006, Mr. Robert Maxwell, as to Count IV, did unlawfully, feloniously and knowingly discharge a firearm, a .380 caliber weapon from a vehicle, causing death or serious physical injury to David Kelso.

Nor has there been any showing that Mr. Maxwell on the same date in Count V, VI, VII and VIII recklessly, unlawfully, feloniously, and recklessly discharged a firearm, a .380 caliber handgun, from a vehicle that created a substantial risk of physical injury to another person, against the peace and dignity of the State of Arkansas.

I believe the testimony from Mr. David Kelso was that he initially, after an argument between the alleged party, was watching TV at the Economy Inn, started hearing reports from a gun, noticed glass (sic) firing, indicated that the last shot was, in fact, the shot that allegedly hit him.

Now, again, I think it's convoluted for the State to say that these initial gunshots were reckless shots, were reckless behavior and yet the last shot was supposedly knowingly firing to cause these injuries to Mr. Kelso.

In addition, Your Honor, the testimony presented before (sic) the State today clearly established that Mr. Maxwell was, in fact, in the driver's position of the vehicle allegedly used in this matter.

The shell casing that was found inside this particular vehicle was found in the passenger's side vehicle.

Furthermore, Your Honor, I think that the shell casings found at the crime scene introduced into the photographs by the State indicates a similar pattern that fired from the passenger's side of a particular vehicle.

In any event, there's no indication of Mr. Maxwell having fired such a weapon or that he participated in the actions that apparently Miss Princess Smith committed.

I don't think that there's a sufficient proof before the Court to show that Mr. Maxwell was an accessory to this matter, and, therefore, all these charges pertaining to Mr. Maxwell should be dismissed.

The motion was denied.

Princess Smith then testified for the defense. At the close of all the evidence, Maxwell's counsel again moved for a directed verdict and said:

> Your Honor, I don't think the State has shown a — through the testimony presented that the injury was, in fact, serious physical injury as defined by the statute.
>
> Mrs. Martin asked Mr. Kelso to raise his shirt to show scar wounds, but I don't think scars are enough to show serious physical injury. I believe the testimony from Mr. Kelso was that he was treated and then apparently immediately released from UAMS the same morning, and, again, I don't think that would suffice to show serious physical injury, and, therefore, the State has not met their burden regarding Count IV.

The motion was again denied.

The jury was instructed by the circuit court that, in order to find Maxwell guilty of unlawful discharge of a firearm from a vehicle in the first degree, it had to find that he or an accomplice knowingly discharged a firearm from a vehicle and thereby caused serious physical injury to Kelso. The jury was also instructed, in accordance with Arkansas Code Annotated § 5-1-102(21) (Repl. 2006), that serious physical injury is physical injury that "creates a substantial risk of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ."

The jury found Maxwell guilty of four counts of unlawful discharge of a firearm from a vehicle in the second degree and one count of unlawful discharge of a firearm from a vehicle in the first degree. For each of the five counts, the jury also found that either Maxwell or an accomplice employed a firearm as a means of committing the felony offense, thereby subjecting him to an enhanced sentence pursuant to Arkansas Code Annotated § 16-90-120 (Repl. 2006).

The jury returned a verdict, which included the maximum of forty years of imprisonment for each of the second-degree-unlawful-discharge-of-a-firearm convictions.[2] For the first-degree-unlawful-discharge-of-a-firearm conviction, the jury's

---

[2] As a habitual offender with four or more prior felony convictions, Maxwell was subject to enhanced sentences pursuant to Ark. Code Ann. § 5-4-501(b)(1) (Repl. 2006).

verdict was life imprisonment. For each of the five convictions, the jury's verdict was the maximum fifteen-year enhancement for use of a firearm. The circuit court then sentenced Maxwell accordingly, with the life sentence and each of the forty-year sentences to run concurrently and the fifteen-year firearm enhancement sentences to run concurrently with each other but consecutively to the life sentence.

Maxwell's sole argument on appeal is that there was insufficient evidence introduced by the State to prove that Kelso suffered serious physical injury, which is an element of unlawful discharge of a firearm from a vehicle in the first degree under Arkansas Code Annotated § 5-74-107(a)(1) (Repl. 2005). As the jury was instructed, "serious physical injury is defined under § 5-1-102(21) as injury "that creates a substantial risk of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ."

We decline to reach this issue of sufficiency of the evidence because it is not preserved for our review. A challenge to the sufficiency of the evidence is preserved by making a specific motion for directed verdict at both the conclusion of the State's case and at the conclusion of all of the evidence. Ark. R. Crim. P. 33.1; *Durham v. State*, 320 Ark. 689, 698, 899 S.W.2d 470, 473 (1995). Rule 33.1 reads in pertinent part:

> (a) In a jury trial, if a motion for directed verdict is to be made, it shall be made at the close of the evidence offered by the prosecution and at the close of all of the evidence. A motion for directed verdict shall state the specific grounds therefor.
>
> . . . .
>
> (c) The failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner required in subsections (a) and (b) above will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment. A motion for directed verdict or for dismissal based on insufficiency of the evidence must specify the respect in which the evidence is deficient. A motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense. A renewal at the close of all of the evidence of a previous

motion for directed verdict or for dismissal preserves the issue of insufficient evidence for appeal. If for any reason a motion or a renewed motion at the close of all of the evidence for directed verdict or for dismissal is not ruled upon, it is deemed denied for purposes of obtaining appellate review on the question of the sufficiency of the evidence.

The rationale behind this rule is that "when specific grounds are stated and the absent proof is pinpointed, the circuit court can either grant the motion, or, if justice requires, allow the State to reopen its case and supply the missing proof." *Pinell v. State*, 364 Ark. 353, 357, 219 S.W.3d 168, 171 (2005). Without a trial court ruling on a specific motion, there is nothing for this court to review. *Ashley v. State*, 358 Ark. 414, 191 S.W.3d 520 (2004). In the instant case, counsel for Maxwell failed to make the specific motion regarding lack of evidence to prove serious physical injury at the close of the State's case. Accordingly, his sufficiency argument is not preserved for our review.

We are mindful of the fact that Maxwell was sentenced to life imprisonment and this court is required to review all motions made for potential reversible error under Arkansas Supreme Court Rule 4-3(h). Nevertheless, this court has held in the past that failure to make the motions for directed verdict with specificity regarding the sufficiency issue on appeal equates to the motion never having been made. See *Tillman v. State*, 364 Ark. 143, 147, 217 S.W.3d 773, 775 (2005); *Webb v. State*, 327 Ark. 51, 60, 938 S.W.2d 806, 811-12 (1997). We hold that this is so even in situations where the motion is specific at the close of all the evidence but not at the close of the State's case. The motion for directed verdict on the issue at hand is simply not preserved. Rule 4-3(h), as a result, does not mandate review of the serious-physical-injury point when the directed-verdict motion has not properly been made. See *Tillman*, 364 Ark. at 147, 217 S.W.3d at 775.

A review of the record has been made for other reversible error pursuant to Supreme Court Rule 4-3(h), and none has been found.

Affirmed.