2009 Ark. 479

**Joseph F. ROUNSAVILLE, Appellant,**

v.

**STATE of Arkansas, Appellee.**

No. CR 09–365.

Supreme Court of Arkansas.

Oct. 8, 2009.

290

Whitney B. James, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Nicana C. Sherman, Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice.

Appellant Joseph F. Rounsaville appeals from his convictions for rape, kidnapping, and terroristic threatening and his sentences of life imprisonment as a habitual offender, thirty years imprisonment, and twelve years imprisonment, respectively. He raises two points on appeal: (1) that the circuit judge erred in admitting the testimony of a prior rape victim under Arkansas Rules of Evidence 403 and 404(b), and (2) that the State's evidence was insufficient to support his convictions. We affirm.

On December 4, 2006, Rounsaville was charged in Lonoke County Circuit Court with rape, kidnapping, and terroristic threatening, involving an adult victim, C.G., in 2004. At a pretrial hearing on June 16, 2008, Rounsaville moved under Arkansas Rules of Evidence 403 and 404(b) to prohibit the State from introducing evidence at trial that he had raped another victim, K.T., under circumstances similar to those involving C.G. Rounsaville claimed that the K.T. evidence was not relevant to the only issue in the C.G. case, which was whether she had consented to sex. He urged that the evidence be excluded because the two encounters were not sufficiently similar, that the probative value of the evidence was outweighed by the risk of prejudice, and that the evidence was offered for the sole purpose of inflaming the jury.

The State's retort was that it intended to introduce the evidence because the similarities between Rounsaville's actions with the two women showed his intent to commit the crimes for which he was charged, showed that he followed the same plan with respect to both matters, and rebutted his claim that C.G. had consented to sex.

At a pretrial hearing on August 26, 2008, Rounsaville renewed his motion in limine to prevent the State from presenting evidence of his encounter with K.T. under Rule 404(b), which the circuit judge subsequently denied.[1]

Rounsaville was tried before a jury on September 16, 2008. In C.G.'s testimony, she revealed that she had met Rounsaville at a friend's house in Lonoke in October of 2003, when she was recovering from an accident. Rounsaville offered to, and did, drive her home that night. After that meeting, Rounsaville began to stop by C.G.'s house during his lunch break to see how she was doing and to talk about the problems he was having with his wife. At some point, the two had consensual sex together in a motel room in Hot Springs.

According to C.G., Rounsaville showed up at her house on December 31, 2003. He was intoxicated and demanded that she have sex with him. When she refused, he took her clothes off and forced her to have sex with him. Afterward, he apologized and acted remorseful. C.G. stated that she forgave him because she did not think it would happen again. In early 2004, Rounsaville offered to help C.G. move into a mobile home in Lonoke. She accepted, and he paid for the entire move.

In April of 2004, C.G. called Rounsaville to ask if she could borrow some money. Rounsaville came over to her house, carrying some extra clothes, and acted "really irritated," she said. He went into her bedroom and told her to take off her clothes. C.G. refused and told Rounsaville that "we're not going to do this. I don't need the money that bad." Rounsaville slammed C.G.'s bedroom door and locked it, shoved her to the bed, and began to take her clothes off. When C.G. resisted, he told her that women who were single parents sometimes had "to do this to get money." She pleaded with Rounsaville to stop and told him that her fourteen-year-old son would be home at any moment.

In response, Rounsaville slapped her, pushed her face down on the bed, and tied her arms behind her back. He then took her underwear off and penetrated her anally while C.G. begged him to stop. Eventually, Rounsaville pulled C.G. off the bed by her hair, forced her to her knees, slapped her several times, and made her perform oral sex on him. She testified that Rounsaville kept saying that he was

1. The circuit court had earlier denied the same motion regarding Rule 403 and Rule 404(b) prior to a mistrial of the first trial that occurred during voir dire.

her "master," that she had to call him "master," and that anytime he wanted to come over to her house, she had to do whatever he said because "that's the price [she] had to pay." Rounsaville then forced her back onto her bed where he began to penetrate her vaginally.

At some point, C.G.'s son came home and knocked on her bedroom door. According to C.G., Rounsaville told her son that they were talking and would be out in a minute. Rounsaville then let her get dressed and said to her: "If you say a word, I will cut your throat." Rounsaville placed the extra clothes he had brought in her dresser and told her that "whenever he wanted to be there, if he needed to hide from his wife, he was going to be there."

C.G.'s son, E.G., testified that he came home from riding his bike with a friend and heard a commotion coming from his mother's bedroom. He knocked on the bedroom door and, when nobody came to answer, he began to pound on the door. Eventually, Rounsaville opened the door slightly and told E.G. that his mother was busy. Rounsaville closed the door, and E.G. returned to his room. When E.G. came out of his room later, Rounsaville was gone, and he could hear his mother crying in her bedroom. He testified that his mother did not come out of her room for two days.

After presenting the testimony of C.G. and her son, the State called K.T. to testify about her similar problems with Rounsaville. She testified that she started dating Rounsaville after meeting him at a nightclub. At the time, K.T. was severely depressed due to the recent deaths of her father and older brother, problems with her sixteen-year-old daughter, and her struggles as a recovering alcoholic. K.T. revealed that she frequently discussed these problems with Rounsaville. Later, when K.T. lost her job, Rounsaville offered to let K.T. move in with him, which she

then did. According to K.T., things went well for about a week, but soon after that, Rounsaville became "extremely aggressive towards [her] as far as sex" and would tell her that she had to do whatever he wanted sexually because she did not have money for rent. Rounsaville also demanded that K.T. call him "master."

Eventually, K.T. began to fear Rounsaville and decided to move out after arguing with him one day about his sexual demands. She packed some of her things and used a kitchen chair to barricade the door to her bedroom. Rounsaville later forced open the door and began screaming and hitting her in the head. He ripped open K.T.'s shirt, grabbed a knife, and began threatening to cut off one of her nipples. K.T. ran out of the bedroom, and Rounsaville followed, hitting and shoving her from behind. When K.T. fell over a couch, Rounsaville forced her to perform oral sex on him. When she refused to cooperate, he pushed her face down on the couch and tied her hands behind her back. He then began to penetrate her anally. After a while, Rounsaville dragged K.T. to the bedroom, tied something around her neck, put a pillow over her face, and told her "you wanted to die, I'm going to help you die," in apparent reference to a previous suicide attempt by K.T. When Rounsaville let her up, she went into the bathroom. There, Rounsaville dragged her into the shower and proceeded to urinate on her. From there, he forced K.T. back into the bedroom where he began to penetrate her vaginally. K.T. said that she then bit Rounsaville's arm until she tasted blood, at which point he hit her "really hard in the head" and let her go.

The prosecutor additionally presented the testimony of Melinda Perkins, K.T.'s probation officer after her theft conviction, and Detective Jerry Keefer. Perkins testified that she noticed bruises on K.T.'s

face when she showed up for her probation appointment. When Perkins asked K.T. if she had been in a car accident or had trouble with one of her sons, K.T. started crying and said that the man she was living with had beaten her up. K.T. then showed Perkins bruising on her arms, back, ankles, wrists, and thighs. Perkins asked if K.T. had been raped, and K.T. said, "yes." Detective Keefer next testified that he executed a search warrant on Rounsaville's house in connection with K.T.'s allegations. He stated that he found evidence consistent with K.T.'s testimony that she had barricaded herself in a room. He also found torn clothing in the bedroom and a zip tie in a trash can.

Rounsaville was convicted of rape, kidnapping, and terroristic threatening and, on appeal, he challenges the sufficiency of the evidence with regard to all three convictions. Although Rounsaville raises this issue as his second point on appeal, double jeopardy concerns require this court to review his sufficiency-of-the-evidence argument first. *See Morgan v. State,* 2009 Ark. 257, 308 S.W.3d 147.

 This court treats a motion for directed verdict on appeal as a challenge to the sufficiency of the evidence. *Ward v. State,* 370 Ark. 398, 260 S.W.3d 292 (2007). This court will affirm the circuit judge's denial of a motion for a directed verdict if there is substantial evidence, either direct or circumstantial, to support the jury's verdict. *Id.* This court has repeatedly defined substantial evidence as "evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture." *Young v. State,* 370 Ark. 147, 151, 257 S.W.3d 870, 875 (2007). Furthermore, "[t]his court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered." *Id.* In determining whether there was substantial evidence to support the verdict, this court looks at all of the evidence presented, including any evidence that is alleged to have been admitted in error. *See, e.g., Goodwin v. State,* 373 Ark. 53, 281 S.W.3d 258 (2008). In addition, the credibility of witnesses is an issue for the jury and not the court. *See Cluck v. State,* 365 Ark. 166, 226 S.W.3d 780 (2006). The fact-finder is free to believe all or part of a witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

 A challenge to the sufficiency of the evidence is preserved by making a specific motion for directed verdict at both the conclusion of the State's case and at the conclusion of all of the evidence. Ark. R.Crim. P. 33.1 (2008); *Maxwell v. State,* 373 Ark. 553, 285 S.W.3d 195 (2008). The rationale behind this rule is that "when specific grounds are stated and the absent proof is pinpointed, the circuit court can either grant the motion, or, if justice requires, allow the State to reopen its case and supply the missing proof." *Pinell v. State,* 364 Ark. 353, 357, 219 S.W.3d 168, 171 (2005). Without a circuit court ruling on a specific motion, there is nothing for this court to review. *Ashley v. State,* 358 Ark. 414, 191 S.W.3d 520 (2004).

After the State rested its case, Rounsaville's counsel moved for a directed verdict, stating as follows:

> I don't feel that the state has met their burden in showing that the sex was not voluntary. I don't believe they made a prima facie case. I don't think that there's enough evidence to support the kidnapping or the terroristic threatening. We'd ask that the Court direct a verdict for the defendant in this matter.

The circuit judge denied the motion for directed verdict. At the close of all of the evidence, Rounsaville's counsel again moved for a directed verdict and stated as follows:

I think that the testimony from the alleged victim—she stated on the record that it—I left my notes in the back, but allegedly she said, "Okay. If we're going to do this, let's do this." And I think her testimony was, during the anal sex, she said, "Stop, it hurts," and so he stopped and started having her perform oral sex, according to her own testimony, and that when she said, "I don't want to have oral sex anymore," he then stopped and began vaginal intercourse. Each time she said, "No, I don't want to do this," he stopped. I think that was in the record, according to her testimony, and those are the specific grounds for why they didn't meet their burden of proof.

The circuit judge again denied Rounsaville's motion for directed verdict.

■ It is clear to this court that Rounsaville failed to make a specific motion regarding the sufficiency of the evidence to prove the charges of kidnapping and terroristic threatening at both the close of the State's case and the close of all of the evidence. Accordingly, his sufficiency argument relating to the jury's verdict on those two charges is not preserved for our review. *See Elkins v. State*, 374 Ark. 399, 288 S.W.3d 570 (2008).

■ That leaves his challenge to the sufficiency of the evidence relating to rape. Rounsaville was convicted of rape in violation of Arkansas Code Annotated section 5–14–103(a)(1), which provides that a person commits rape "if he or she engages in sexual intercourse or deviate sexual activity with another person ... [b]y forcible compulsion." "Forcible compulsion" is defined as "physical force or a threat, express or implied, of death or physical injury to or kidnapping of any person." Ark. Code Ann. § 5–14–101(2) (Repl.2006). This court has defined "physical force" as "any bodily impact, restraint or confinement, or the threat thereof." *Freeman v.*

*State*, 331 Ark. 130, 132, 959 S.W.2d 400, 401 (1998). The test used to determine whether there was physical force is "whether the act was against the will of the party upon whom the act was committed." *Id.* at 133, 959 S.W.2d at 401.

■ We conclude that the State's presentation of C.G.'s own testimony was sufficient evidence for the jury to conclude that Rounsaville's actions were against her will. This court has repeatedly held that a rape victim's testimony alone is substantial evidence to support a rape conviction. *See, e.g., Ellis v. State*, 364 Ark. 538, 222 S.W.3d 192 (2006). C.G. testified that she refused when Rounsaville demanded sex, that she resisted when he began to take her clothes off, that he repeatedly slapped her in the face, that he tied her hands behind her back and anally raped her while she begged for him to stop, that he forced her to perform oral sex on him, that he forced her to have vaginal sex, and that after the attack was over, he told her that he would kill her if she told anyone about what had happened. Her testimony is more than sufficient to show that the sex acts were against her will, and, thus, substantial evidence exists to support the element of forcible compulsion under Arkansas Code Annotated section 5–14–103(a)(1).

Next, Rounsaville asserts that the circuit judge erred in admitting the testimony of a prior rape victim, K.T., under Arkansas Rules of Evidence 404(b) and 403. He argues that the testimony should have been excluded under Rule 404(b) because it was not independently relevant but was offered to show his bad character traits and that he acted in conformity with those traits and because the details of the prior rape were not sufficiently similar to the circumstances of the rape for which he was charged. Rounsaville also claims that the testimony should have been excluded under Rule 403 because its prejudicial ef-

fect outweighed its probative value. We disagree on both counts.

Arkansas Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

 The test for admissibility under Rule 404(b) is whether the evidence is independently relevant, which means that it has the tendency to make the existence of any fact or consequence to the determination of the action more or less probable than it would be without the evidence. *See Williams v. State,* 343 Ark. 591, 36 S.W.3d 324 (2001). We give considerable leeway to the circuit judge in determining the degree of similarity between the circumstances of a prior crime and the particular crime at hand required for the admission of evidence of the prior crime under Rule 404(b). *See Sasser v. State,* 321 Ark. 438, 447, 902 ₁₁S.W.2d 773, 778 (1995) (citing 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 112 n.4 and accompanying text (2d ed.1994)). In reviewing the admission of evidence under Rule 404(b), we have noted that circuit judges have broad discretion in deciding evidentiary issues, and their decisions are not reversed absent an abuse of discretion. *Burmingham v. State,* 342 Ark. 95, 27 S.W.3d 351 (2000).

This court has previously recognized that, in prosecutions for sexual offenses, evidence of prior similar incidents may be independently relevant under Rule 404(b) to rebut a defendant's claim that a sexual encounter with a victim was consensual. *See, e.g., McCullough v. State,* 2009 Ark. 134, 298 S.W.3d 452 (evidence that defendant unlawfully entered the apartments of two other women in similar circumstances admissible in trial for rape and residential burglary because independently relevant to rebut defendant's claim that victim had voluntarily allowed him into her apartment and consented to sex); *Davis v. State,* 362 Ark. 34, 207 S.W.3d 474 (2005) (evidence of prior similar incident admissible under Rule 404(b) in trial for attempted rape because independently relevant to rebut defendant's claims that his encounter with the victim was consensual).

 In the instant case, Rounsaville's counsel argued at trial that Rounsaville's encounter with C.G. was entirely consensual and that C.G.'s testimony to the contrary was not credible. In light of this defense, the evidence that Rounsaville raped K.T. under similar circumstances was independently relevant in light of his argument that his April 2004 sexual encounter with C.G. was consensual. We hold that the circuit judge did not abuse his discretion by admitting the evidence of Rounsaville's rape of K.T. under Rule 404(b).

 Likewise, we conclude that the circuit judge did not err in admitting the evidence under Rule 403. Rule 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." Ark. R. Evid. 403 (2008). This court has noted that evidence offered by the State in a criminal trial is likely to be prejudicial to the defendant to some degree, otherwise it would not be offered. *See, e.g., McCullough,* 2009 Ark. 134, at 7, 298 S.W.3d at 455. Nevertheless, the evidence should not be excluded under Rule 403 unless the defendant can show that the evidence lacks probative value in view of the risk of *unfair* prejudice. *Id.* This court reviews a

circuit judge's ruling under Rule 403 for an abuse of discretion. *Eubanks v. State*, 2009 Ark. 170, 303 S.W.3d 450.

As already noted, the evidence of Rounsaville's encounter with K.T. was relevant to the issue of whether his encounter with C.G. was consensual. It was also probative evidence that the rape took place. In light of the broad discretion afforded the circuit judge in weighing the probative value of challenged evidence against the danger of its unfair prejudicial effect, we cannot say that the circuit judge abused his discretion in allowing this evidence under Rule 403.

The record in this case has been reviewed for reversible error pursuant to Arkansas Supreme Court Rule 4–3(i), and none has been found.

Affirmed.

JIM HANNAH, Chief Justice, concurs.

I concur based on the doctrine of stare decisis. *See Cluck v. State*, 365 Ark. 166, 179, 226 S.W.3d 780, 790 (2006)