DONALD L. CORBIN, Justice, dissenting. Because I believe the majority has erred in its conclusions that evidence regarding statements made by Appellant while incarcerated and awaiting trial, as well as photographs depicting a tattoo on Appellant’s back were properly admitted, I respectfully dissent. At trial, the State sought to introduce into evidence a litany of prior bad acts committed by Appellant, as well as statements he made while awaiting trial and photographs of a “Hell Bound” tattoo that is on his back. In seeking to introduce this evidence, the State repeatedly argued that the evidence was relevant to its theory that Appellant has antisocial-personality disorder and to refute Appellant’s claim that he was unable to conform his conduct to the law because he suffered from brain damage and a decreased mental capacity. Dr. Barry Crown testified as an expert witness for Appellant. According to Dr. Crown, he conducted a neuropsychological evaluation of Appellant and concluded that his intellectual functioning is in a category that would be considered impaired and disabled. Dr. Crown further stated that Appellant has significant neuropsychological impairment, which is a term for organic brain damage, and has functional impairment in the areas of memory, reasoning, judgment, and language-based critical thinking. Dr. Crown also opined that antisocial-personality | «.¡disorder is not an appropriate diagnosis for someone with brain damage like Appellant. On cross-examination, however, Dr. Crown admitted that Appellant is not mentally retarded and shows some level of critical thinking. During the State’s cross-examination of Dr. Crown, the prosecutor read through the diagnostic criteria for antisocial-personality disorder as set forth in the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) and questioned Dr. Crown as to whether Appellant had related information to him about specific bad acts that fell within those diagnostic criteria. Appellant objected several times on the basis that the State was “backdooring” evidence that would not be otherwise admissible. Appellant also pointed out that the State knew what information Appellant had related to Dr. Crown because the State had all the raw data in Dr. Crown’s report. Appellant further argued that Dr. Crown did not deny that Appellant possessed certain characteristics of antisocial personality disorder but was of the opinion that it was not an appropriate diagnosis for Appellant, who he believed suffered from organic brain damage. The circuit court made several statements in overruling Appellant’s objections, but the circuit court’s overarching basis for allowing the State to elicit such questions was that Appellant had opened the door to the issue of antisocial-personality disorder. What disturbs me about the circuit court’s rulings with this line of questioning is that the circuit court, and now the majority on appeal, focuses almost exclusively on the fact that the evidence was relevant and fails to consider its prejudicial effect. In other words, I believe the circuit court abused its discretion when it failed to analyze whether the evidence’s ] 34probative value was substantially outweighed by the danger of unfair prejudice. See Ark. R. Evid. 403 (2013).[1] Of all the improper character evidence admitted, I am most concerned with the two instances I mentioned at the outset: the statements Appellant made while in custody and the photographs of Appellant’s tattoo. I turn first to the testimony of the two jailers. During the State’s rebuttal, Jacob Saffell, an employee with the Craighead County Detention Center, testified that on July 30, 2011, he heard Appellant tell another inmate that, “It’s funny that I shot one cop and the other one is still walking. I should have shot him, too.” Appellant objected, arguing that the statement was too far removed in time and was admitted just to show that Appellant was a bad guy. The State countered that it went directly to the issue of Appellant’s antisocial-personality disorder and lack of remorse. The circuit court overruled the objection without explanation. The State next called Randal Ishmael, also a jailer in the Craighead County Detention Center. He testified that on August 5, 2011, he heard Appellant tell another inmate that “the only thing he regretted about that night was that he “didn’t get the other motherfucker,” too.” With regard to the issues of evidence of Appellant’s bad acts and lack of remorse, the State argues generally that the circuit court did not abuse its discretion in admitting such | ^evidence because such evidence, even if prejudicial, was relevant as it “refuted Appellant’s claims of organic brain damage and indicated his lack of mistake and a plan, intent, or motive for shooting at Officer Schmidt and Sergeant Overstreet.” The problem with this argument is that it presumes all relevant evidence, regardless of its prejudicial effect, may be admitted at trial. That is simply contrary to our Rules of Evidence and this court’s case law. The majority sidesteps this issue, however, by concluding that the admission of the jailers’ testimony did not violate Rule 404(b) because it was not offered as character evidence but was, instead, independently relevant to refute Lard’s claim of mental disease or defect. First, it does not matter that the State did not offer this evidence as character evidence. Second, while I question whether the evidence was relevant to refute Appellant’s claim of mental disease or defect, even if there is some independent relevance to this evidence, the danger of unfair prejudice outweighs any such probative value. The majority, however, does not even consider the issue of prejudice. Our law is clear that in order for evidence to be admissible under Rule 404(b), it must be relevant to prove the main issue independently from proving bad character. See Green v. State, 365 Ark. 478, 231 S.W.3d 638 (2006). The test for admissibility under Rule 404(b) is whether the evidence is independently relevant, which means it must have a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Osburn v. State, 2009 Ark. 390, 326 S.W.3d 771. However, even if evidence is independently relevant pursuant to Rule 404(b), Rule 403 provides that “evidence may be excluded if its probative value is substantially ^outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” This court has noted that evidence offered by the State in a criminal trial is likely to be prejudicial to the defendant “to some degree,” otherwise it would not be offered. Vance v. State, 2011 Ark. 243, at 23, 383 S.W.3d 325, 341; Rounsaville v. State, 2009 Ark. 479, at 12, 346 S.W.3d 289, 296. Here, however, this testimony is not merely prejudicial “to some degree.” I recognize that in reviewing the admission of evidence under Rule 404(b), circuit courts have broad discretion in deciding evidentiary issues, and their decisions are not reversed absent an abuse of discretion. Rounsaville, 2009 Ark. 479, 346 S.W.3d 289. Here, however, I am convinced that the circuit court abused its discretion in admitting this evidence. I think any scant probative value it may have had was greatly outweighed by undue prejudice. The State had ample evidence to support its position that Appellant has antisocial-personality disorder. Both Dr. Rocho and Dr. Molden testified that Appellant exhibited a lack of remorse about killing Officer Schmidt and that such a lack of remorse was consistent with one of the characteristics of antisocial-personality disorder. And, while I recognize that the State is allowed to prove its case as conclusively as it can, the Rules of Evidence still apply. Appellant also argues that the circuit court abused its discretion in allowing into evidence photographs depicting a tattoo on his back that says “Hell Bound” and shows a 137scene of a cemetery.[2] Prior to admitting the photographs into evidence, the circuit court allowed the State to show the photographs to Dr. Crown and to ask him if the tattoo would be consistent with a particular type of individual. Dr. Crown admitted that the tattoo demonstrated the ability for artistic or abstract thought, but further opined that it did not necessarily suggest a higher order of functioning. The State later showed the photographs of the tattoo to its own expert, Dr. Rocho, who opined that the design demonstrated a person’s ability to take a thought, plan it out, and draw it on paper. She admitted on cross-examination, however, that she did not have an opinion as to Appellant’s functional ability. The State also showed the photograph to its other expert, Dr. Molden, who stated that it was a complex drawing, with a lot of attention to detail, and required concentration and planning, as well as some abstract thought. The State then moved to introduce the two photographs of the tattoo during the testimony of Ricky Allan Lard, Appellant’s brother, after Ricky testified that the photographs depicted a drawing done by Appellant. Appellant objected, arguing that he had provided the State with significantly less inflammatory examples of his artwork, and the State was simply trying to admit the photographs to show that Appellant is a bad person. Appellant further argued that he did not actually tattoo his own back and, thus, the photographs of his tattoo were not the best evidence of his actual artwork. The State countered that the photographs were admissible for several reasons, including that they demonstrated Appellant’s artistic liability, his ability to have abstract thoughts, and were “very clearly a sign of someone who has an anti-social personality.” The State conceded that the photographs were prejudicial but asserted that they were also probative and relevant. The majority states that the photographs were offered to refute Appellant’s claim of brain damage and were thus properly admitted into evidence as they were independently relevant. Although the majority briefly addresses the issue of prejudice, its ultimate conclusion is wrong. The majority holds that it can “find no manifest abuse of discretion in the circuit court’s conclusion that the probative value of the photographs exceeded their prejudicial effect.” But, the circuit court never reached that conclusion. The record demonstrates that the circuit court found that the photographs were not prejudicial and, accordingly, did not weigh the probative value of the photographs versus their prejudicial effect. At one point, the circuit court stated: The fact that it’s on his back and a photograph was taken of his back at the time he was being treated for a gunshot wound he sustained during this incident, is not prejudicial and it’s evidence that’s already in front of the jury and this is not inflammatory in any shape or form. The content of the tattoo itself, I mean, frankly, the tattoo and the picture you showed that you’re going to proffer, the intricacy of the design, that the court feels is the relevant portion and the State has a right to introduce that. Clearly, the circuit court abused its discretion when it failed to even recognize that the photographs were in any way prejudicial. and, thus, did not weigh the probative value of the evidence versus the prejudicial effect of it. The majority ignores this fact and instead substitutes its own finding; however, it is not in this court’s purview to make its own findings. This case is incredibly troubling to me. The murder of Officer Schmidt, while in the 1 spline of duty, was senseless. But, despite the heinous nature of his crime, Appellant was entitled to a fair trial, and I am not sure that this trial comported with that standard. I have never reviewed a capital-murder case in which the State was allowed to introduce into evidence virtually every bad act and every bad character trait of the defendant. In fact, prior to trial, Appellant filed a motion for production of Rule 404(b) evidence. The State asserted that it did not intend to use such evidence unless Appellant opened the door to it. However, once the trial started, the State immediately began backdooring into evidence all of Appellant’s bad acts and bad traits on the theory that it was relevant to demonstrate that Appellant has an antisocial-personality disorder and not brain damage. In my opinion, the circuit court abused its discretion repeatedly in allowing the State to elicit such evidence, even when it was information relied on by the experts. But, I am most troubled by the jailers’ testimony and the photographs of the tattoos. While I feel strongly that the circuit court abused its discretion in admitting the testimony of the jailers and the photographs of the tattoo, I am mindful that this court will apply a harmless-error analysis in a case where there is overwhelming evidence of guilt. There is certainly overwhelming evidence of Appellant’s guilt in the instant case, and I cannot say that the verdict of guilt would have been different had the circuit court properly exercised its discretion and excluded this evidence. But, what I am concerned about in the instant case is the sentence of death imposed by a jury that was exposed to inadmissible and prejudicial evidence. In my opinion, the majority is not properly adhering to this court’s duty to conduct |4na meaningful review of that sentence under Ark. R.App. P.-Crim. 10 (2013). In my many years on this court, I have come to recognize that our review of the penalty phase in a death case should be performed with a heightened sense of due process because the finality of the punishment sets it apart. We have acknowledged that a death sentence is different because it is a unique and irreversible punishment. See State v. Robbins, 339 Ark. 379, 5 S.W.3d 51 (1999) (holding that this court is required to review the record in all death-penalty cases for egregious and prejudicial errors, even if a defendant waives his personal right to appeal in a death-penalty case); see also Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). I do not believe that the majority’s decision in this case comports with a heightened sense of due process. While the majority makes a passing reference to Rule 10 in connection with arguments it deemed not preserved, it in no way considers the factors set forth under that rule. Not only does the majority fail to set forth the factors enumerated in Rule 10, I think it negligently fails to analyze subsection (vii), which requires this court to consider “whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor.” Thus, where as here, the erroneously admitted evidence was unduly prejudicial and was part of a pattern by the State to instill in the minds of the jurors that Appellant was an evil person deserving of the death penalty, I cannot say that the death sentence handed down in this case was not the result of passion and prejudice on the part of the jurors. Accordingly, I would affirm Appellant’s convictions but remand this case for a new sentencing hearing by a jury that has not been exposed to this prejudicial and inadmissible evidence. HANNAH, C.J., joins in this dissent. . The majority seemingly relies on Ark. R. Evid. 703 (2013) to support its general conclusions that the circuit court did not abuse its discretion in admitting this bad-character and bad-acts evidence because experts are allowed to disclose to the jury the factual basis for their opinions. This is troubling to me because the State does not raise this argument to us, and I can find no case where we have allowed an expert witness to testify to a defendant’s prior bad acts over repeated objections that the evidence was inadmissible pursuant to Ark. R. Evid. 404(b). Moreover, the majority's reliance on the decision in Miller v. State, 2010 Ark. 1, 362 S.W.3d 264, is inapposite, as the objection to the evidence in that case was based on hearsay. . The photographs, which are of Appellant’s back, were taken after Appellant had been shot by Sergeant Overstreet. Thus, there is also smeared blood seen in the photographs.